**H. S. BARRINGTON, Andrew Reid, Albert M. Johnson, and Charles Sidney Noble, Appellants,**

v.

**Arthur SWANSON, Appellee.**

No. 5575.

United States Court of Appeals Tenth Circuit.

Oct. 30, 1957.

Rehearing Denied Dec. 16, 1957.

David K. Watkiss, Salt Lake City, Utah (Grant Macfarlane and Zar E. Hayes, Salt Lake City, Utah, on the brief), for appellants.

Richard H. Moffat, Salt Lake City, Utah (D. Howe Moffat and Peter W. Billings, Salt Lake City, Utah, on the brief), for appellee.

Before BRATTON, Chief Judge, and HUXMAN and BREITENSTEIN, Circuit Judges.

HUXMAN, Circuit Judge.

Appellee, Arthur Swanson, filed a complaint in the United States District Court for the District of Utah against appellants, H. S. Barrington, Andrew Reid, Albert M. Johnson, Charles Sidney Noble and the Noble Uranium Corporation. As ultimately shaped, the complaint consisted of two counts. Count 1 alleged that plaintiff entered into a written contract with the Noble Uranium Corporation for the purchase of mining claims; that he paid Noble Uranium Corporation the sum of $8,000; that under the terms of the contract he was entitled to and did re-scind the contract and had demanded the return of the $8,000; and that the Corporation had failed to return the same. The prayer was for judgment for $8,000, interest and costs.

In count 2 plaintiff alleged that the individual defendants acting in pursuit of a common plan or concerted action fraudulently represented that they had good title to six contiguous mining claims known as the Gail claims; that the claims were located as provided by the mining laws of the United States and of the State of Utah; that the claims were full claims; that there was no conflict or overlapping; that they or their agents had been on each of the Gail claims during the 60 days next prior to September 23, 1955 [the date of the contract]; that said representations were known to them to be untrue or were made recklessly with carelessness as to whether they were true. The prayer on this count was for $1,000,000 damages.

Trial was had to the Court. It made findings of fact and conclusions of law and, based thereon, entered judgment against both the Corporation and individual defendants for $10,479. Only the individual defendants have appealed.

The trial Court found that the defendants did not have good title to claims Nos. 3, 4, 5, and 6 of the Gail group; that the individual defendants did on July 8, 1955, and other dates represent to Swanson that they were, and Noble Uranium Corporation would become, the owners of the six contiguous Gail claims; that at the time they made these representations they knew, or should have known in the exercise of business judgment, that they did not have good and marketable title to the Gail claims; that these statements by them as individuals and promoters of the Noble Uranium Corporation were made for the purpose and with the intent that Swanson would rely upon them in entering into the contract of purchase and that he did rely thereon. The Court concluded as a matter of law that the defendants, as individuals and promoters of Noble Uranium Corporation, did not at the time of making the false and fraudu-

lent representations to the plaintiff have good and marketable title to the six Gail claims; that the defendants as individuals and as promoters of the Noble Uranium Corporation knew, or should have known in the exercise of sound business judgment, that they did not have good and marketable title to the six Gail claims and that they were guilty of fraud based upon the false and fraudulent misrepresentations made by them to plaintiff. Based upon these findings, the Court entered judgment for plaintiff and against all the defendants for $10,479. Appellants do not challenge the amount of the judgment. They challenge only Swanson's right to recover judgment in any amount against them.

■ Appellants contend that appellee did not sustain the burden of proof of establishing by clear and convincing evidence the alleged fraud and deceit of appellants or that appellee relied thereon to his detriment. Utah adheres to the rule that fraud and deceit must be established by clear and convincing evidence.[1]

John Thornton testified for the plaintiff that all four of the defendants were present at the meeting with him and Mr. Swanson and a Mr. Lindberg; that they —Thornton and Swanson—understood that "these fellows had uranium property for sale and we were interested in finding out about it and so they told us about what they had. As I recall, Mr. Noble and Mr. Johnson did most of the talking for the defendants and they said that they had claims for sale down at the Circle Cliff Area of Utah"; that they had other claims but the main claims were the five Gail claims, with a prospect of getting a sixth claim. He testified that Reid was present; that he did not recall what he said; that he just more or less "went along with the boys." He testified that "their group, the Noble Uranium group, was in agreement that they had these claims for sale;" that he had the impression that there was a Corporation known as the Noble Uranium Corporation that had these claims. He testified

further that later on they met with the group again; that all four of the defendants were there; that they talked about the properties that Noble Uranium had and tried to arrive at a price in terms of how a purchase could be handled; that at a meeting with the four defendants around the 31st of July they talked mostly about the Gail claims; that at this meeting Mr. Noble said they had these claims and that they had bought them from a fellow by the name of Pollack. He testified that this was the first time he knew it was not a corporation, but that they were informed by the defendants that they were in the process of forming a corporation and that it should be cleared up in a few days and that they would be able to deal as a corporation; that it was agreed that the next day they would go to Mr. Swanson's attorney, give him the particulars so that the papers could be drawn up on a written contract between Swanson and the Noble Uranium Corporation. Swanson testified that "Mr. Noble told us that he was acting as trustee for this group and that they would be making what they would call a Noble Uranium Corporation. He said that as soon as they got incorporated they, of course, could do business. He said they had this property as a group and that he was trustee." True, there is no testimony that any of the appellants stated that they had good title to these claims, but that is implied in what they said when they stated they had these claims for sale. Swanson obligated himself in the written contract to pay $575,000 in cash and royalty payments for these claims, together with other claims, but the Gail claims were the principal consideration for the payment of this sum and, while the written contract was with the Corporation, it was but the consummation of the agreement plaintiffs had worked out with the defendant promoters who were the owners of the claim. The written contract represented that the seller was the owner of these claims. We have no difficulty in concluding, as the

1. Ferrell v. Wiswell, 45 Utah 202, 143 P. 582; Pace v. Parrish, 122 Utah 141, 247 P.2d 273.

trial Court did, that the effect of these representations in the negotiations led to a meeting of the minds of the parties prior to the formation of the Corporation and led Swanson to believe that defendants owned these claims and had the right to convey their ownership and title to Swanson.

■ Ordinarily it is not enough in an action for deceit to show only that the representation was false, for if it was honestly believed to be true that is a good defense. But a representation recklessly made with insufficient knowledge of its truth could not be a statement honestly made.[2] We are dealing here with mining claims, title to which depends upon strict compliance with legal technicalities of the law, such as the erection of proper monuments and the filing of proper location notices. Appellants had not been on the property to ascertain whether the monuments were properly erected. All they had with respect to the title of the property was the statement of the man from whom they were purchasing these claims. Furthermore, they had actual knowledge that the location notices were vague and did not establish contiguous claims, yet they made the positive representation that the claims were contiguous.

■ Mr. Noble who was trustee and did most of the negotiating for the group testified that "I first saw the location notices to Gail No. 1 through No. 5 along about the third of August, 1955. I read these location notices and handed them to my attorney * * * for his opinion on them and he indicated they were O.K. and for us to go ahead. We read that 3 and 4 were superimposed on one another but, the claims were sold to us by Mr. Pollack as contiguous and so since the wording was vague as far as reference was concerned, we naturally supposed they would lay along side of each other."

If the wording of the location notices was vague and showed that claims 3 and 4 were superimposed upon each other, how could they believe "they would lay along side of each other"? We think there is ample evidence to sustain the Court's findings that appellants made reckless statements constituting fraud as a matter of law.

■ Appellants make the further contention, however, that in any event no clear and convincing evidence was adduced that Swanson relied upon these representations to his detriment. It is contended that he relied upon an independent inspection of the claims which revealed that monuments were not in place. The record indicates that appellee's agent made a short trip to the claims. But the purpose of this trip was not to establish the exact location of these claims or to determine whether they were contiguous. The evidence convincingly establishes that the purpose of this inspection trip was to establish the quality of the minerals and its purpose was to ascertain radioactivity and geology. The evidence further establishes that because of the difficulty of the terrain no inspection of the territorial boundaries of these claims, or whether monuments were in place, could have been made during the time appellee's representatives were on them. Under these circumstances, they had a right to rely on appellants' representation with respect to the title and contiguous location of the claims.

■ It is urged that in any event the judgment against H. S. Barrington and Andrew Reid is not sustainable because neither of them made any representations. The record shows that Barrington and Reid attended at least one of the meetings between appellants and appellee and perhaps were present at other meetings. It is without dispute that all of ap-

2. Hindman v. First National Bank, 6 Cir., 112 F. 931, 57 L.R.A. 108; McFadden v. United States, D.C., 20 F.Supp. 625; Shriver v. Union Stockyards National Bank, 117 Kan. 638, 232 P. 1062; Whaley v. Niven, 175 Ark. 839, 1 S.W.2d 3; Cooper v. Schlesinger, 111 U.S. 148, 4 S.Ct. 360, 28 L.Ed. 382; Schwinn v. United States, 9 Cir., 112 F.2d 74; 37 C.J.S. Fraud § 21, page 257.

pellants were together in this promotional venture and that Noble was in large part their spokesman. They were present when Johnson and Noble made these representations and heard them. Being jointly engaged in this promotional venture, all are bound by the representations made by any one of them within the scope of the joint venture.[3]

Finally, it is contended that the trial Court erred in refusing to grant a new trial on the grounds of newly discovered evidence. The newly discovered evidence is set out in the affidavit of Dannie Keith Pollack, wherein he described the manner in which he and his father, Joseph C. Pollack, located the five Gail claims and established the monuments. He stated that as far as he knew only Noble had been on the claims. Appellants submitted affidavits stating that they had tried to locate Dannie Pollack prior to the time of the trial but were unable to do so. Barrington and Reid also submitted affidavits that they had made no statements or representations and had not been afforded an opportunity to testify at the trial.

■■ It is Hornbook law that the granting of a new trial on the grounds of newly discovered evidence rests in the sound discretion of the trial court and its judgment will not be disturbed unless clearly erroneous.[4] Pollack's affidavit does not conclusively establish that the claims were validly established at the time they were sold to Swanson. It throws no light on the representations made to Swanson nor does it establish with certainty that proper location notices were filed showing the five Gail claims to be contiguous claims and not overlapping. Apparently appellants did not consider Dannie Pollack's testimony vital to their defense because no effort was made to obtain a continuance of the trial to enable them to locate Dannie Pollack and procure his evidence. An ex-

amination of the record does not compel the conclusion that the Court abused its discretion in overruling the motion for a new trial.

Affirmed.

---

3. African Metals Corporation v. Bullowa, 288 N.Y. 78, 41 N.E.2d 466; Grant v. Weatherholt, 123 Cal.App.2d 34, 266 P.2d 185.

4. Houtz v. General Bonding & Insurance Co., 10 Cir., 1956, 235 F.2d 591; Thiringer v. Barlow, 10 Cir., 1953, 205 F.2d 476; Anderson v. Tway, 6 Cir., 1944, 143 F.2d 95, certiorari denied 324 U.S. 861, 65 S.Ct. 865, 89 L.Ed. 1418.