**TELEVISION RECEPTION CORPORA-TION, Plaintiff-Appellee,**

v.

**Charles A. DUNBAR, Dunbar-Murphy & Company, Inc., and Commonwealth Cable Company, Inc., Defendants-Appellants.**

Nos. 18072–18843.

United States Court of Appeals,
Sixth Circuit.

April 28, 1970.

---

Ben B. Fowler, Frankfort, Ky. (Don E. Cooper, Somerset, Ky., Dailey & Fowler, Frankfort, Ky., on the brief), for Charles A. Dunbar and another.

Thomas J. Roberts, Middlesboro, Ky., and J. Milton Luker, London, Ky. (Luker, Luker & Roberts, London, Ky., on the brief), for Television Reception Corporation.

Before EDWARDS and McCREE, Circuit Judges, and O'SULLIVAN *, Senior Circuit Judge.

McCREE, Circuit Judge.

This is an appeal from a judgment entered in a diversity action in which the plaintiff initially commenced an action against Charles Dunbar, a Florida resident, and Dunbar-Murphy & Co., a Florida Corporation. In its complaint, plaintiff alleged that during the period of time relevant to the controversy it owned and operated a cable television system in Somerset, Kentucky. Plaintiff further alleged that Dunbar, individually and in his capacity as president of Dunbar-Murphy & Co., orally agreed: (1) to aid plaintiff in its efforts to obtain a twenty year franchise from the city of Somerset for the operation of plaintiff's cable television system, and (2) to purchase the cable television system on behalf of an undisclosed principal. Finally, plaintiff alleged that despite these undertakings, Dunbar fraudulently entered a bid for the franchise on behalf of Dunbar-Murphy & Co. and the company was awarded the franchise by the City Council. Plaintiff sought an adjudication that Dunbar-Murphy & Co. held the franchise in trust for plaintiff and should be required to transfer it to plaintiff, or, in the alternative, should pay plaintiff $350,000 in damages.

After the complaint was filed, Dunbar-Murphy assigned its franchise to Commonwealth Cable Company, a newly organized Kentucky corporation. This assignment was approved by the Somerset City Council, as required by the franchise agreement. Commonwealth Cable Company then commenced an action in the Pulaski County, Kentucky Circuit Court against Television Reception Corporation seeking a declaration that Television Reception was usurping Commonwealth Cable's franchise by continuing to operate the cable television system.

Television Reception responded by filing motions in the federal district court requesting that Commonwealth Cable be made a party defendant in the federal action and that it be enjoined from prosecuting the action pending in the Pulaski County Circuit Court. The District Judge granted both motions.[1]

After being made a party defendant in the federal action, Commonwealth Cable filed a counterclaim seeking the same relief it had requested in the state court action. In particular, Commonwealth Cable sought an order requiring Television Reception to cease operating its cable television system and to remove its equipment from the City of Somerset.

The action then proceeded to trial before the District Judge sitting without a jury. The District Judge dismissed plaintiff's complaint, ordered plaintiff to cease operating its cable television system in Somerset, Kentucky and to remove its equipment from the city, and also ordered plaintiff to pay defendants the profits received from the operation of the cable television system after June 28, 1966, the date the franchise agreement between the city and Dunbar-Murphy was signed.

---

* When this case was argued, Judge O'Sullivan, as an active judge of this court, presided.

1. These rulings by the District Judge were the subject of a separate appeal filed in this court (No. 18072). This earlier appeal has been consolidated with the appeal from the judgment entered on the merits.

After judgment was entered, plaintiff filed a motion for a new trial and two supporting affidavits. One of the affidavits was executed by Kenneth Lutz, a former business associate of Dunbar, who had been present during the initial discussions between Dunbar and Clyde House, the president of Television Reception. This affidavit supported the testimony given by House during the trial. The other affidavit, which was filed by House, indicated that efforts to obtain Lutz's presence at the trial had been made, but that he could not be located until two weeks after the trial. The District Judge denied the motion for a new trial without comment.

█ On appeal, plaintiff has, for the first time, raised a number of objections to the jurisdiction of the District Court. Challenges to the jurisdiction of a federal court can be raised at any stage of the proceedings, and even the party who originally invoked the federal court's jurisdiction is not precluded from making such a challenge. American Fire & Casualty Co. v. Finn, 341 U.S. 6, 17–18, 71 S.Ct. 534, 95 L.Ed. 702 (1951); Central States Co-ops. v. Watson Bros. Transp. Co., 165 F.2d 392, 394 (7th Cir. 1948). We hold, however, that the challenges presented are without merit.

█ Plaintiff's first contention is that although Dunbar-Murphy & Co. was incorporated in Florida, its principal place of business was in Kentucky and therefore the requisite diversity of citizenship between plaintiff and each defendant was not present. 28 U.S.C. § 1332(a); Strawbridge v. Curtis, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). Plaintiff relies on the fact that at the time the action was instituted, Dunbar-Murphy's primary asset was the franchise for the operation of the cable television system. The only assets of the company located in Florida were an office, some office furniture and a small bank account.

Despite these facts, we find plaintiff's contention unpersuasive. In determining where a corporation has its principal place of business, a court must evaluate the facts of the particular case and decide "which facts are important and which facts are relatively unimportant." Kelly v. United States Steel Corp., 284 F.2d 850, 852 (3rd Cir. 1960). In the present case, the nature of Dunbar-Murphy's business renders the location of its primary asset at the time the action was commenced largely irrelevant to the determination of the state of its principal place of business. The company served as a corporate shell for the activities of Charles Dunbar. These activities included Dunbar's attempts to arrange purchases and sales of cable television systems throughout the country. Dunbar did not intend to operate these systems through Dunbar-Murphy & Co. Indeed, in the present case Dunbar-Murphy assigned the franchise on the Somerset system to Commonwealth Cable shortly after obtaining it. Thus, the company's ownership of the franchise was merely a temporary circumstance related to Dunbar's efforts to arrange a sale of the Somerset system. This type of ownership alone is not sufficient to make Somerset, Kentucky the principal place of business of Dunbar-Murphy & Co. for purposes of diversity jurisdiction.

Plaintiff's second objection to the District Court's jurisdiction is that even if diversity existed at the time the action was commenced, the assignment of the franchise to Commonwealth Cable, a Kentucky corporation, and the joinder of Commonwealth Cable as a party defendant defeated it.

██ The general rule is that federal jurisdiction is tested according to the facts as they exist at the time an action is initiated and that diversity jurisdiction, once acquired, is not defeated by events occurring subsequent to the commencement of the action. Smith v. Sperling, 354 U.S. 91, 93, 77 S.Ct. 1112, 1 L.Ed.2d 1205 n. 1 (1957); Wichita R. R. & Light Co. v. Pub. Util. Comm'n, 260 U.S. 48, 54, 43 S.Ct. 51, 67 L.Ed. 124 (1922). We perceive no reason to deviate from this general rule in the present

case where, pursuant to Rule 25(c), Fed. R.Civ.P.,[2] the District Judge ordered the joinder of a transferee *pendente lite*. *See* 3B J. Moore, Federal Practice ¶ 25.08, at 25–326 (2d ed. 1969). *Cf.* Jones v. Village of Proctorville, 303 F.2d 311 (6th Cir. 1962); People of Porto Rico v. Fortuna Estates, 279 F. 500 (1st Cir. 1922). The joinder did not alter the respective substantive rights of the tranferor or of the transferee *pendente lite*, and, regardless of whether the transferee was made a party to the action, its rights in relation to the franchise depended on the outcome of the litigation between Television Reception and the transferor, Dunbar-Murphy & Co. 3B J. MOORE, FEDERAL PRACTICE ¶ 25.08 (2d ed. 1969); O'Donohue v. First National Bank, 166 F.Supp. 233 (E.D. Pa. 1958). Joinder merely represented a discretionary determination by the District Judge that Commonwealth Cable's presence would facilitate his conduct of the litigation.

■■ Plaintiff's final jurisdictional objection is that the city of Somerset, Kentucky was a non-diverse, indispensable party to the action because complete relief could not be accorded in its absence and because the parties to the action could incur inconsistent obligations to the city if it were not made a party. Plaintiff relies on Rule 19, Fed.R.Civ.P., which provides, in pertinent part:

a. *Persons to be Joined if Feasible.* A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede

his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action.

b. *Determination by Court Whenever Joinder not Feasible.* If a person as described in subdivision (a) (1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Plaintiff contends that complete relief could not be accorded to it because a provision in the franchise agreement requires the city's approval of any assignment of the franchise. Since plaintiff sought the imposition of a constructive trust in its favor and an order requiring the constructive trustee to assign the franchise to it, the city would have to be

2. Rule 25(c) provides:
(c) *Transfer of Interest.* In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party. Service of the motion shall be made as provided in subdivision (a) of this rule.

made a party so that, in the event the litigation was terminated in plaintiff's favor, the court could order the city to approve the assignment.

The difficulty with this argument is that plaintiff did not charge that the City of Somerset was a part of the fraud allegedly perpetrated by Dunbar. The city's involvement in the controversy was limited to its decision to grant the franchise to Dunbar and plaintiff has not suggested that this decision was motivated by any reason other than that Dunbar's bid was the most attractive.

Under these circumstances, it is doubtful the District Court could compel the city to approve an assignment of the franchise to plaintiff even if plaintiff succeeded in establishing its allegations of fraud. The city in its discretion decided that plaintiff's bid was not the best of the three presented [3] and, in the absence of any impropriety in reaching this decision, it should not be compelled to enter into a franchise agreement with a rejected bidder. Accordingly, the imposition of a constructive trust would not be appropriate and the city's presence would not be necessary for the other form or relief (monetary damages) requested by plaintiff.

Plaintiff also contends that the District Court could not grant complete relief to Commonwealth Cable on its counterclaim unless the city was made a party. This contention also is without merit. The relief sought by Commonwealth Cable is expressly authorized by Kentucky law, and the relevant provisions do not require that the governmental unit which granted the franchise be made a party to the action. See K.R.S. §§ 415.030, 415.080. Under section 415.-030 usurpation of a franchise may be prevented "by an ordinary action." Moreover, Commonwealth Cable's ownership of the franchise was uncontroverted

and it therefore was the proper party to initiate the action authorized by the Kentucky statutes.

Plaintiff's other contentions with regard to the indispensability of the City of Somerset involve the second clause of Rule 19(a). Plaintiff contends that any judgment entered would result in inconsistent obligations between the city and the unsuccessful party and that this could be prevented only if the city were made a party. We conclude that, to the contrary, no inconsistent obligations would be created, regardless of the outcome of the litigation. The City of Somerset severed its legal relationship with plaintiff in April, 1966 when it terminated plaintiff's license by repealing the ordinance under which plaintiff had been given authority to operate its cable television system. A judgment in favor of the defendants would not first resurrect, and then impair, the now terminated legal relationship between the city and plaintiff. On the other hand, a judgment in favor of plaintiff would not alter the existing legal relationship created by the franchise agreement between the city and Commonwealth Cable, since we already have concluded that a compelled transfer of the franchise would not be an appropriate form of relief.[4]

Accordingly, we hold that the City of Somerset is not a party who is "contingently necessary" under the criteria of Rule 19(a), Fed.R.Civ.P. This makes it unnecessary to consider the indispensability factors of Rule 19(b), Fed.R.Civ. P. The District Court therefore was not divested of jurisdiction for any of the reasons presented on appeal and it was proper for the District Judge to determine the merits of the controversy.

Plaintiff's primary objection related to the merits is that the District Judge's refusal to grant a new trial was erroneous. Plaintiff filed two affidavits to support the motion for a new trial. The

---

3. In addition to the bids submitted by Television Reception Corporation and Charles Dunbar, a third bid was submitted by Comex Cable Company.

4. The inappropriateness of a compelled transfer also means the city would not have to be made a party to prevent impairment of its interest in the franchise. See Rule 19(a) (2) (i), Fed.R.Civ.P.

first, filed by Clyde House, recounted House's efforts to obtain Kenneth Lutz's presence at the trial. House stated that he had personally endeavored to locate Lutz prior to the trial, but had been unsuccessful. He also stated that after deposing the defendant Dunbar and learning that Lutz at one time had resided in St. Louis, Missouri, he had employed a detective agency to locate Lutz, but the agency also had been unsuccessful. Finally, House stated that Lutz had heard about House's efforts to locate him and had called House. After talking to House, Lutz indicated his willingness to file an affidavit and to testify if a new trial should be granted.

In his affidavit Lutz stated that he had been a business associate of Dunbar during the period when Dunbar was negotiating with House about the Somerset cable television system, and that he had been present during the initial discussion between Dunbar and House. Lutz further stated that during this discussion Dunbar talked only about acting as a broker to arrange a sale of House's system and not about acting for himself as a principal; that Dunbar stated to House he had a buyer ready to purchase the system, but privately admitted to Lutz that this was not true; that Dunbar was informed by House that the original franchise under which the Somerset system was being operated had been cancelled and that Television Reception was then operating under a terminated license; that being so advised, Dunbar agreed to act as House's agent to attempt to obtain a franchise for House in order to enhance the value of the Somerset system; and that Dunbar, in violation of his fiduciary obligation to House, talked instead to two city officials about obtaining the franchise in his own behalf or for Dunbar-Murphy & Co.

These statements by Lutz directly contradicted important findings of fact made by the District Judge. The District Judge had found that House had misrepresented to Dunbar that Television Reception Corporation was operating under an existing franchise and that Dunbar had learned there was no franchise during a city council meeting. Despite these important contradictions and their source, the District Judge denied the motion for a new trial without stating any reasons for his ruling.

Rule 59(a), Fed.R.Civ.P., provides, in pertinent part:

(a) Grounds. A new trial may be granted to all or any of the parties and on all or part of the issues * * * in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted in suits in equity in the courts of the United States. On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment.

Although we regret the necessity of prolonging this already protracted litigation, we conclude that the District Judge committed a clear abuse of discretion by not at least granting the motion to the extent of opening the judgment and taking additional testimony. *See* 6A J. Moore, Federal Practice ¶ 59.05[5] (2d ed. 1966).

The uncontradicted affidavits of House and Lutz clearly assert that House diligently sought Lutz's presence as a witness at the trial, but was unable to locate him. They also disclose that Lutz, a former business associate of the defendant who was present during discussions between House and Dunbar, would testify that Dunbar had agreed to represent House in his efforts to obtain a franchise, but had violated this agreement and had acted on his own behalf. In light of the source of this evidence and its unequivocal nature, we do not consider it merely cumulative or impeaching. To the contrary, it is evidence which, if credited, would probably produce a different result. *See* Thomas v. Nuss, 353 F.2d 257, 259–260 (6th Cir. 1965); 6A J. Moore, Federal Practice ¶

59.08[3] (2d ed. 1966). Moreover, the District Judge had no basis for crediting or discrediting Lutz's version of the facts when he denied the motion for a new trial.

Accordingly, we vacate the judgment of the District Court and remand this case for further proceedings consistent with this opinion.