**HOYT R. MATISE COMPANY, Plaintiff-Appellant,**

v.

**Stanley ZURN, Defendant-Appellee.**

**No. 84–1106.**

United States Court of Appeals, Fifth Circuit.

March 4, 1985.

Rehearing Denied April 1, 1985.

Michael Braden, Dallas, Tex., for plaintiff-appellant.

Black & Roberts, George C. Black, Jr., Randy Roberts, Dallas, Tex., for defendant-appellee.

Before GEE, POLITZ, and HIGGINBOTHAM, Circuit Judges.

GEE, Circuit Judge:

Hoyt R. Matise Co. (Matise), a licensed real estate broker, sued Stanley Zurn to recover a real estate commission. Matise based its claim on alternate theories: (1) that it had procured a purchaser who had entered into an enforceable contract of sale for Mr. Zurn's property, or (2) that it had procured a purchaser who was ready, willing, and able to purchase the property on Mr. Zurn's terms. After a bench trial, the district court entered judgment for defendant Zurn.

Matise moved for a new trial on the ground that the would-be purchaser, Michael Mullen, who could not be located at the time of trial, had been located and would testify in a manner directly contrary to the district court's finding of fact. The district court denied the motion, and Matise appealed the adverse judgment and the denial of the motion for new trial.

We conclude that the contract of sale between Mr. Zurn and Mr. Mullen was valid and enforceable and that the district court clearly erred in finding that Matise was at fault in the sale's failing to close. Therefore Matise is entitled to its commission as provided in the contract of sale.[1] Accordingly, we reverse and remand for findings as to the amount of the commission provided by the contract. Because we hold that the district court acted within its discretion in denying Matise's motion for new trial, the district court need not reopen testimony on the damages issue.

## I. Facts

Marie Turner, a licensed real estate broker employed by Matise, contacted Mr. Zurn in early 1981 concerning the sale of a parcel of rental property located in Dallas County, Texas. Miss Turner acted on behalf of her client, Mr. Mullen, who was interested in purchasing the property. Mr. Zurn held an option to purchase the property which was due to expire March 15, 1981.

On March 2, 1981, Miss Turner presented Mr. Zurn with a contract of sale that bore the signatures of Miss Turner and Mr. Mullen, whose name had been signed by Miss Turner.[2] The contract of sale consisted of

---

1. Because we find the contract to have been enforceable, we do not consider Matise's second contention that it was entitled to recover a commission apart from the contract.

2. The parties disagree as to when Harvey Hays, another Matise broker, signed the contract. Resolution of this conflict is not necessary to disposition of the issues before us.

Matise's standard printed contract of sale form, an attached addendum, an attached exhibit covering financing terms, and an attached copy of a page from the city of Dallas plat books on which the outlines of the property were marked with heavy black lines and which bore the notation "subject property." The contract stated that Matise was acting as the seller's agent.

Mr. Zurn required that changes be made in the contract to reduce the broker's commission and alter the manner of its payment, to require the purchaser to expedite inspection of the property and examination of existing notes and deeds of trust, to eliminate the seller's right to terminate if the purchaser did not produce the earnest money after notification that the seller had received an offer from another purchaser, and to give the seller more favorable terms on three promissory notes to be executed by the purchaser. Miss Turner personally marked these changes on the contract. Mr. Zurn initialed these changes and signed the contract.

After Miss Turner's meeting with Mr. Zurn, Mr. Mullen initialed all of Mr. Zurn's changes. Counterpart originals of the contract introduced by Matise and Mr. Zurn bear the initials of both Mr. Mullen and Mr. Zurn affirming Mr. Zurn's changes. No representative of Matise initialed the changes.

The contract introduced in evidence by Matise also shows an additional change to part C of the addendum, initialed by Mr. Mullen but not by Mr. Zurn. Part C had allowed Mr. Zurn seven days after the execution of the agreement to deliver to Mr. Mullen copies of utility bills, existing notes and deeds of trust on the property, and the current rent roll for the property. The change initialed by Mr. Mullen required the documents to be delivered the day after execution of the contract. The copy of the contract introduced by Mr. Zurn shows no such change and bears no one's initials beside the text of part C of the addendum.

A letter agreement dated March 4, 1981, but executed on March 5, refers to the March 2 contract of sale and provides that Mr. Mullen's attorney must approve all of the financing documents for the transaction. Mr. Zurn, Mr. Mullen, and representatives of Matise signed this letter.

On March 5, Mr. Mullen paid into escrow the $10,000 earnest money recited in the contract of sale. Thereafter, Mr. Mullen continued to request more favorable financing arrangements from Mr. Zurn. Mr. Zurn testified that Miss Turner at one point conveyed to him Mr. Mullen's intention not to proceed with the transaction if financing could not be arranged according to his proposal. No closing documents were ever prepared and the sale never closed. In April 1981, Mr. Mullen's earnest money was returned, and Mr. Mullen and Mr. Zurn executed mutual releases of the contract of sale. Matise was not a party to those releases.

Mr. Mullen did not testify at trial because counsel for Matise was unable to locate him during the three days in which testimony was taken. Although Matise had announced "ready" for trial subject to Mr. Mullen's availability, Matise neither requested a continuance during trial nor moved to reopen testimony after trial when it located Mr. Mullen, who had been out of the city when the case was heard.

## II. The District Court's Opinion

In its conclusions of law, the district court held, among other things, that the contract adequately described the property but was unenforceable because Matise never initialed the changes to the contract and because Matise did not establish that Mr. Mullen had authorized Miss Turner to sign the contract for him. The court further held that the contract expired by its own terms when the transaction did not close on March 15, 1981. The court concluded that Mr. Zurn was ready, willing, and able to close the contract within the prescribed time limits and that neither Mr. Mullen nor Matise was ready or able to close. The district court also held that even if the contract was enforceable and did not expire by its own terms, the contract required Matise to look only to the earnest money

for its commission if the purchaser breached the contract.

## III. Enforceability of the Contract
### A. Matise's Failure to Initial Changes

■ The district court held that no contract was formed because the parties had specifically provided in the contract of sale document that *all* parties had to initial any changes. Since Matise did not initial any of the changes handwritten in by Miss Turner, the court reasoned that the document was merely evidence of a series of offers and counteroffers in a continuing negotiation. We hold that the court erred in reaching this conclusion. Matise's failure to initial the changes did not preclude Matise's ratifying the agreement by its subsequent action. All parties to the contract signed the March 4, 1981, letter agreement which expressly referred to and amended the contract of sale. By doing so, they recognized themselves to be bound by the earlier contract. *See Gateway Cable T.V., Inc. v. Vikoa Construction Corp.*, 253 So.2d 461 (Fla.Dist.Ct.App.1971) (holding that, even though language in contract provided that it would not take effect until two persons at defendant's home office had signed it, a jury could find that defendant, by cashing plaintiff's check and assuring plaintiff that the contract was binding had demonstrated its assent to the contract and satisfied the underlying purpose of the language requiring a signature); *see generally Templeton v. Nocona Hills Owners Assoc.*, 555 S.W.2d 534, 538 (Tex.Civ.App.—Texarkana 1977, no writ) (dictum); *City of Ingleside v. Stewart*, 554 S.W.2d 939 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.); *Taylor Construction Co. v. Clynch*, 196 S.W.2d 700 (Tex.Civ.App.—Amarillo 1946, no writ); *Hollums v. Hancock*, 180 S.W.2d 209 (Tex.Civ.App.—Amarillo 1944, no writ); 17 C.J.S. *Contracts* § 69 (1963).

■ Moreover, Miss Turner's having handwritten the changes into the contract satisfied the underlying purposes of the initialing requirement. Two provisions of the contract are relevant to the modification issue. The first provision states that "[m]odification shall be made in writing only and signed by all parties hereto, and by reference made part hereof." The second provides: "Each party, his heirs, successors and assigns is bound when he signs this contract, except that any modification hereof caused by a counter-offer must be initialed by Purchaser, Seller, and Matise." As we read the contract, the first of these clauses applies to agreements embodied in a separate document that alter the terms of the executed agreement. It requires that separate agreements be separately signed. The second clause covers alterations on the printed form itself. It requires that any alteration marked on the standard form before or after the parties sign at the bottom of the page be separately initialed.[3] In that way the parties could be sure that no party would be bound by a material alteration not brought to his attention. They could also avoid litigating whether a particular modification was part of the contract at the time that a party placed his signature on the document. The essence of the

---

**3.** This provision is infelicitously drafted. Either "modification" is not used in its technical sense of alteration of an existing contract, or "counteroffer" does not carry its technical meaning of an alternative offer made in response to another party's offer before the making of the contract.

The ambiguous introductory phrase presents further problems of interpretation. One logical reading of the phrase, "bound when he signs this contract, except ..." is that parties who have signed the contract at the bottom of the first page are bound by the terms of the original document and by those modifications to the original form that all parties have signed. Unsigned modifications would drop out of the contract, leaving the parties bound to the original terms. When a provision in a contract is ambiguous, however, we must take into account the parties' understanding of it. Mr. Zurn and Miss Turner testified that the parties believed that by signing the contract of sale on its first page and initialing modifications to be presented to Mr. Mullen, Mr. Zurn was making a counteroffer. We therefore conclude that Mr. Zurn's signing the contract on the first page was not an acceptance of the agreement's original terms. *See generally Ives v. Urban*, 385 S.W.2d 608, 610 (Tex.Civ.App.—Corpus Christi 1964, writ ref'd n.r.e.).

provision is that no party will be required to perform under a provision to which he has not assented or when he doubts whether other parties are bound to perform under that provision. We therefore reject Matise's contention that its representatives were not required to initial the "modifications" because they were original terms when they signed the document. We note, however, that because the changes on the contract of sale document appear in Miss Turner's handwriting, there can be no doubt that Matise had notice of and assented to the changes and that the other parties knew of Matise's assent. We therefore hold that the contract's requirement that changes be initialed by all parties was effectively met.

## B. Turner's Authority to Sign Contract

■ The district court also erred in holding that the contract was not valid and enforceable because it was not established by competent evidence that Miss Turner had authority to sign the contract at the

bottom of page one for Mr. Mullen. Regardless of whether Mr. Mullen initially authorized Miss Turner to sign on his behalf, it was undisputed at trial that he later initialed contract modifications, signed the March 4 letter agreement amending the referenced contract of sale, and paid $10,-000 earnest money into escrow. On this evidence, it is inescapable that Mr. Mullen ratified Miss Turner's signing as his agent.[4]

## C. The Validity of Mr. Mullen's Acceptance

■ Mr. Zurn maintains that the record provides alternative grounds to support the court's holding that the contract was unenforceable and its consequent entry of judgment in his favor.[5] Mr. Zurn characterizes Mr. Mullen's purported acceptance of the contract of sale as only a counteroffer because Mr. Mullen made a change in part C of the addendum to which Mr. Zurn never assented.[6] We do not

---

**4.** *Walker v. Keeling,* 160 S.W.2d 310 (Tex.Civ. App.—Amarillo 1942, no writ), does not preclude our holding that Mr. Mullen ratified Miss Turner's signing for him. The *Walker* case holds that a brokerage contract signed by the broker on behalf of his principal cannot serve as the writing required by art. 6573a, the special statute of frauds for real estate brokerage contracts. The court's concern was that the broker could circumvent the statute of frauds requirement of a signed writing by oral testimony concerning his authorization. That holding is no bar to recognizing authority that has been ratified by the principal's subsequent acts.

We see no impropriety in Miss Turner's acting as agent both for Mr. Mullen and for Mr. Zurn in this case, where her role was strictly that of an intermediary. *See Hughes v. Miracle Ford, Inc.,* 676 S.W.2d 642, 645 (Tex.App.—Dallas 1984).

**5.** Even though an appellee has not filed a cross appeal, he may take the position on appeal that the record supports the court's judgment on any ground, including one rejected or ignored in the lower court. *United States v. American Railway Express Co.,* 265 U.S. 425, 435, 44 S.Ct. 560, 563, 68 L.Ed. 1087 (1924); *In re Henderson,* 577 F.2d 997, 1002 n. 5 (5th Cir.1978); *Spurlin v. General Motors Corp.,* 531 F.2d 279, 280 (5th Cir.1976); *City of Safety Harbor v. Birchfield,* 529 F.2d 1251, 1254 n. 4 (5th Cir.1976).

**6.** Counsel for Mr. Zurn also contends on brief that Mr. Zurn never received notice of Mr. Mul-

len's acquiescence in Mr. Zurn's changes, and that therefore Mr. Mullen's acceptance was ineffective. We are puzzled by this contention, since the counterpart original of the contract of sale introduced by the defense and authenticated by Mr. Zurn bears both Mr. Zurn's and Mr. Mullen's initials beside all of Mr. Zurn's changes, and *only* Mr. Zurn's changes. Because Mr. Zurn held a copy of the contract effectively executed and showing agreement by all parties on all terms, we doubt whether Mr. Mullen's holding a copy of the contract bearing a change to part C of the addendum initialed only by himself can represent a counteroffer at all. In the absence of mutual mistake, it represents a request for modification of the existing contract. Nor are we persuaded that the change in part C was the sort of material alteration to a written instrument made after execution that would avoid the instrument. *See Laughlin v. Stephenson,* 525 S.W.2d 308, 311 (Tex.Civ.App.—Houston [1st Dist.] 1975, no writ).

In addition, the record in this case makes clear that, even if Miss Turner had *not* delivered to Mr. Zurn a copy of the contract bearing Mr. Mullen's initials, she told Mr. Zurn that Mr. Mullen had initialed the changes, and three days later Mr. Mullen and Mr. Zurn executed the letter agreement, which ratified the contract of sale. That same day, Mr. Mullen paid the $10,-000 earnest money into escrow.

agree. To transmogrify a purported acceptance into a counteroffer, it must be shown that the acceptance differs in some material respect from the offer. *United Concrete Pipe Corp. v. Spin-Line Co.*, 430 S.W.2d 360, 364–65 (Tex.1968); *Lambert v. Taylor Telephone Co-operative*, 276 S.W.2d 929, 932 (Tex.Civ.App.—Eastland 1955, no writ). Mr. Mullen's acceptance differed from Mr. Zurn's offer only in that it required Mr. Zurn to furnish Mr. Mullen copies of utility bills, existing notes and deeds of trust on the property, and the current rent roll on March 3 rather than March 9, as the original terms of part C of the addendum had required. In making this alteration, Mr. Mullen did no more than make part C of the addendum consistent with Mr. Zurn's earlier change to part G of the addendum, which required Mr. Mullen to notify Mr. Zurn by March 5 if, upon examination, the existing notes and deeds of trust on the property proved unsatisfactory. Without the change to part C, Mr. Mullen might have been foreclosed from objecting to the existing notes and deeds of trust because he was required to do so at a time before Mr. Zurn had provided them.[7] The parties could not have intended such a result.[8] In these circumstances, we hold that the alteration to part C of the addendum was not material. Mr. Mullen therefore accepted Mr. Zurn's offer.[9]

### D. Other Defects

We have considered Mr. Zurn's contentions that the contract of sale is unenforceable because its terms are too indefinite or because its description of the property is insufficient. These contentions are without merit.

### IV. Matise's Entitlement to a Commission

Texas law provides that a broker who has procured a buyer who has entered into an enforceable contract of sale with the seller has earned his commission, even if the transaction later fails to close, *McNeil v. McLain*, 272 S.W.2d 573 (Tex. Civ.App.—Fort Worth 1954, no writ); *Anderson-Berney Bldg. Co. v. Swan*, 133 S.W.2d 269 (Tex.Civ.App.—Fort Worth 1939, writ dism'd, judgmt. cor.), unless (1) there is specific contractual language making the broker's commission contingent on closing, *Leonard Duckworth, Inc. v. Michael L. Field & Co.*, 516 F.2d 952 (5th Cir.1975), or (2) the failure to close is due to some fault of the broker, *Henry v. Schweitzer*, 435 S.W.2d 941 (Tex.Civ.App. —San Antonio, 1968, writ ref'd n.r.e.). Mr. Zurn and Mr. Mullen had entered into an enforceable contract of sale. When they rescinded the contract, they did not obtain from Matise a waiver of its right to its commission. Therefore, Matise was entitled to its commission under the terms of the contract unless it was at fault in the deals failure to close.

The contract of sale describes the manner of payment of the broker's commission at closing. It also provides for payment of the commission if the buyer or the seller breaches the contract. Moreover, it states that the broker "has earned" a commission. Nothing in the contract suggests to us that the parties intended that Matise be paid a commission under the contract only if the sale closed. On the contrary, that the contract specifically provides for payment of a commission if the buyer or the seller defaults is conclusive that the parties did not

---

**7.** The phrasing of part C of the addendum resulted in the alteration's requiring Mr. Zurn to expedite provision of the utility bills and the rent roll along with the existing notes and deed of trust.

**8.** It is undisputed that Miss Turner furnished Mr. Mullen the documents required by part C of the addendum. Even if the documents were furnished later than March 3, the parties reaffirmed their intention to be bound by the contract in the March 5 letter agreement, two days after the last day on which the documents could be furnished according to Mr. Mullen's change in part C.

**9.** That Mr. Mullen continued to request more favorable financing terms than those to which he was bound by the contract does not mean that no contract had been concluded. *See* Restatement (Second) of Contracts § 61 (1979).

intend a commission to be earned only upon closing. The contractual provisions that concern payment "at closing" protect only the broker's right to demand payment at that time. *See McPherson v. Osborn,* 475 S.W.2d 804, 807 (Tex.Civ.App.—Amarillo 1971, no writ). The contract's expiration by its own terms before closing therefore does not deprive Matise of its right to the commission.

▇▇▇▇ We are also persuaded that the district court clearly erred when it found that Matise was at fault in the transaction's failing to close.[10] It is the mutual responsibility of the buyer and seller to see that a contract of sale closes before its expiration. *Kenver Corp. v. Robinson,* 492 S.W.2d 317, 320 (Tex.Civ.App.—Beaumont 1973, writ ref'd n.r.e.). A broker has no duty to revive a contract that expires without a closing. *Fuess v. Mueller,* 630 S.W.2d 715, 718 (Tex.App.—Houston [1st Dist.] 1982, no writ). The contract in this case imposed no additional duties on the broker before closing. That Miss Turner continued to act as Mr. Mullen's agent in requesting more favorable financing terms of Mr. Zurn did not alter the fact that the previously executed contract bound Mr. Mullen. Therefore, the continuing requests for modification could not have made Matise responsible for the failure to close. Nothing in the record suggests any conduct on the part of Matise amounting to a tortious interference with the established contractual rights. The district court therefore erred in holding that the expiration of the contract deprived Matise of the right to its commission.

### V. Manner of Payment of Commission

▇▇▇ The district court also erred in holding that, because the failure to close was the fault of the purchaser, Matise could not recover its commission directly from Mr. Zurn rather than from Mr. Mullen's earnest money, which had been placed in escrow.[11] The contract states: "In the event of refusal of Purchaser to proceed with the transaction according to this contract, then the earnest money shall be forfeited to the agent up to the amount of commission, balance to Seller as liquidated damages, if Seller elects damages instead of specific performance."[12] This provision does not preclude Matise's action against Mr. Zurn.

Read together with the rest of the contract, the provision does not affect the seller's underlying obligation to pay Matise's commission unless the seller elects to take the earnest money as liquidated damages. The contract states that Matise "has earned a commission payable as provided herein" and that the earnest money is to be *applied to* payment of the commission. The contract provides for payment out of the earnest money in order to enhance the broker's ability to collect its commission. The title company's otherwise disposing of the earnest money does not relieve the seller of his obligation to pay the commission. When the buyer defaults, the contract permits the seller to recover liquidated damages or to sue for specific performance. The quoted provision entitles the seller to liquidated damages only after the broker has recovered the full amount of its commission from the earnest money.[13] If the seller instead obtains specific performance, the buyer will pay him the full contract price as if the transaction had closed as agreed. If the transaction had closed, however, the seller would have been obligated to pay the broker its commission.

---

**10.** The court characterized this assessment of fault as a conclusion of law. We view it as a mixed question of law and fact.

**11.** We have not reviewed the district court's finding that Mr. Mullen was at fault in the failure of the sale to close.

**12.** The provision is ambiguous. Because neither party introduced evidence of the parties' interpretation of it, however, we must construe it without their aid.

**13.** We express no opinion as to whether, under Texas law, the provision limits the broker to the amount of the earnest money if the seller elects to settle for liquidated damages only. *See V/W Realty Sales Agency v. Long Meadow Country Club,* 537 S.W.2d 533, 536 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.).

If we construed the contract to limit the payment of commission in the event of the buyer's default to the amount of the earnest money, no matter what course of action the seller took in response, the contract would allow the seller who obtained specific performance a windfall recovery from the buyer's breach. The parties could not have intended so irrational a result. When Mr. Mullen breached the contract, Mr. Zurn declined to pursue any legal remedy against him. The contract did not empower Mr. Zurn to nullify Matise's claim against himself when he released Mr. Mullen from his obligations. *See Miller v. Carlson*, 390 S.W.2d 64 (Tex.Civ.App.— Texarkana 1965, writ ref'd n.r.e.) (holding that although contract provided for broker's commission to be paid out of purchaser's deposit if purchaser defaulted, broker's recovery was not limited to amount of deposit when broker had not consented to seller's cancellation of contract). We therefore hold that the quoted provision of the contract serves to permit the seller to elect to take liquidated damages from the earnest money after it is applied toward payment in full of the broker's commission. The provision is inapplicable to this case.

Matise procured a buyer who entered into an enforceable contract of sale with Mr. Zurn. The failure of the sale to close was not due to any fault of Matise. Matise is therefore entitled to recover its commission. Page one of the contract as modified sets forth a commission of 2.5 per cent of $867,000, or $21,675. Part D of the addendum as modified provides for a commission of $19,500. Because there is some evidence to suggest mutual mistake in calculation of the amount of the commission in part D, we remand to the district court for consideration of the amount of the commission to which Matise is entitled [14] and for consideration of Matise's request for an award of interest, costs, and attorney's fees. Accordingly, the judgment is

REVERSED and the cause REMANDED.

**14.** In considering this additional matter, the court may, but need not, reopen testimony. Matise's motion for new trial to permit Mr. Mullen to testify was properly denied. A court may grant a new trial so that a party may introduce additional testimony if the movant shows (1) that the evidence was discovered since trial, (2) that there are facts from which the court may infer reasonable diligence to discover and obtain the evidence on the part of the movant, (3) that the evidence is not merely cumulative or impeaching, and that it is material, and (4) that the evidence will probably produce a different result. We review the district court's disposition of the motion only for an abuse of discretion. *Chemical Delinting Co. v. Jackson*, 193 F.2d 123 (5th Cir.1951).

Matise cannot demonstrate even the first element. It concedes that it anticipated calling Mr. Mullen at trial; presumably it knew what he would say. Matise did not protect itself by moving for a continuance or subpoenaing Mr. Mullen. The failure to do so suggests that Matise believed that it had adequately presented its case without Mr. Mullen's testimony. *See Bickford v. John E. Mitchell Co.*, 595 F.2d 540, 543 (10th Cir.1979); *Barrington v. Swanson*, 249 F.2d 640, 644 (10th Cir.1957). The parties tried the case to the court in June. The court did not enter judgment until November. In the interim, Matise never moved to reopen testimony. Matise's counsel located Mr. Mullen and moved to reopen evidence only after the court entered judgment. It appears that Matise's motion is grounded on a contention available to every defeated plaintiff—that it could not have foreseen that the district court would reject its claim without the testimony of the absent witness. *See In re Westec Corp.*, 434 F.2d 195, 204 (5th Cir.1970).

Matise's position here is not like that of the plaintiff in *Television Reception Corp. v. Dunbar*, 426 F.2d 174 (6th Cir.1970). In that case, counsel for plaintiff had gone so far as to hire a detective agency to try to locate the absent witness, whose city of residence was not known, before trial. Plaintiff had not been able to find the witness until two weeks after trial. The Sixth Circuit held that the district court had abused its discretion in not reopening testimony. The *Dunbar* court could hardly have expected the plaintiff in that case to have moved for a continuance when it had no reasonable expectation of locating the absent witness in the near future. Matise knew how to contact Mullen and expected him to return to the city shortly. It should have moved for a continuance.