**MPJ, My Personal Jet, A.V.V., Plaintiff,**

v.

**AERO SKY, L.L.C., Defendant.**

**Civil Action No. SA–09–CV–693–XR.**

United States District Court, W.D. Texas, San Antonio Division.

Nov. 30, 2009.

E. Michelle Bohreer, Todd J. Zucker, Bohreer & Zucker LLP, Houston, TX, for Plaintiff.

Ron A. Sprague, Gendry & Sprague, P.C., San Antonio, TX, for Defendant.

## ORDER ON MAGISTRATE JUDGE'S REPORT & RECOMMENDATION

XAVIER RODRIGUEZ, District Judge.

On this day, the Court considered the Report and Recommendation of the Magistrate Judge (Docket Entry No. 14). The Court referred motions in the above-styled and numbered cause of action to the Magistrate Judge for initial consideration and for a ruling pursuant to 28 U.S.C. § 636(b)(1)(B). The Magistrate Judge then recommended that the Court grant Plaintiff's motion to confirm an arbitration award, deny Defendant's counter-motion to modify or vacate the arbitration award, sustain and grant Plaintiff's objection and motion to strike Defendant's exhibit A, and deny both parties' request for a hearing. Having considered the report, the Court ACCEPTS the Magistrate Judge's report and recommendation. Plaintiff's pending motion to confirm an arbitration award (Docket Entry No. 1) is GRANTED, Defendant's counter-motion to modify or vacate the arbitration award (Docket Entry No. 5) is DENIED.

## Background

Plaintiff MPJ, My Personal Jet, A.V.V. ("MPJ") and Aero Sky, L.L.C. ("Aero Sky") entered into an agreement under which Aero Sky would perform scheduled maintenance on MPJ aircraft. A dispute between the parties led to arbitration before the Honorable John J. Specia, a then-retired state District Judge of Bexar County, Texas.

## Procedural History

On August 24, 2009, MPJ initiated this case when it sought an order to confirm the arbitration award against Aero Sky. (Mot. for Order Confirming Arbitration Award (Aug. 24, 2009) [Docket Entry No. 1].) Aero Sky filed a counter-motion for the Court to modify or vacate the arbitration award. (Resp. to Mot. for Order Confirming Arbitration Award & Counter-mot. to Modify or Vacate Arbitration Award (Sept. 3, 2009) [Docket Entry No. 5].) The Court referred the motions to United States Magistrate Judge Pamela A. Mathy for a report and recommendation for the Court's consideration. On November 10, 2009, Magistrate Judge Mathy provided the Court with her report and recommendation for this Court's review and consideration. Neither party has objected.

## Legal Standard

In reviewing the Magistrate Judge's report and recommendation, the Court must conduct a de novo review of any of the Magistrate Judge's conclusions to which a party has specifically objected. See 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). As to the portions of the report that are not objected to, the Court needs only to review those portions to determine whether they are clearly erroneous or contrary to law. *Id.*; *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir.), *cert. denied*, 492 U.S. 918, 109 S.Ct. 3243, 106 L.Ed.2d 590 (1989). A party may serve and file objections to the order within ten days. FED. R. CIV. P. 72(a), (b)(2). In this case, neither party has objected to the report and recommendation, so the Court evaluates the report and recommendation to determine if it is clearly erroneous or contrary to law.

## Analysis

The Magistrate Judge evaluated the arbitration award pursuant to the standards outlined in the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–16. As the Magistrate Judge noted, "the district

court's review of an arbitration award, under the [FAA], is extraordinarily narrow." *Prescott v. Northlake Christian Sch.,* 369 F.3d 491, 494 (5th Cir.2004) (internal quotation marks omitted). The Court must confirm the award unless it should be vacated under Section 10 or modified under Section 11 of the FAA. *See* 9 U.S.C. § 9. Sections 10 and 11 provide the exclusive grounds for vacatur and modification. *See* 9 U.S.C. §§ 10–11.

The Magistrate Judge found that Aero Sky has not demonstrated that the award was procured by corruption, fraud or undue means; evident partiality; misconduct on the part of the arbitrator in refusing to hear evidence pertinent and material to the controversy to the prejudice of its rights, or that the arbitrator exceeded his authority. Moreover, the Magistrate Judge found that Aero Sky did not meet the requirements to warrant modification of the award.

In accordance with the standards of the Federal Arbitration Act, the Magistrate Judge concluded that the Court should confirm the arbitration award. This conclusion is not contrary to law or clearly erroneous.

### Conclusion

The Court hereby ACCEPTS the Report and Recommendation of the Magistrate Judge's Report and Recommendation, GRANTS Plaintiff's motion to confirm the arbitration award, DENIES Defendant's cross-motion to modify or vacate the arbitration award, and ACCEPTS the Magistrate Judge's report and recommendation regarding the related matters involving a motion to strike an exhibit and denying requests for hearing.

It is so ORDERED.

### REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

PAMELA A. MATHY, United States Magistrate Judge.

**TO: Honorable Xavier Rodriguez United States District Judge**

Pursuant to the limited Order of referral in the above-styled and numbered cause of action to the undersigned United States Magistrate Judge [1] and consistent with the authority vested in United States Magistrate Judges under the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 1(d) of the Local Rules for the Assignment of Duties to United States Magistrate Judges in the Western District of Texas, the following report is submitted for your review and consideration.

### I. JURISDICTION

■ This Court has diversity subject matter jurisdiction under 28 U.S.C. § 1332(a) because there is complete diversity of citizenship and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. Although the Federal Arbitration Act ("FAA") is "not jurisdictional," [2] § 9 of the FAA authorizes a party seeking to confirm an arbitration award to apply for such an order in the federal district court selected by the parties or, if no court is specified, in the United States court in and for the district in which such award was made. [3] No court is specified in

---

1. Docket no. 19 (Oct. 8, 2009; referring only docket nos. 1 and 5).

2. *Hall Street Assoc., L.L.C. v. Mattel, Inc.,* 552 U.S. 576, 582 n. 2, 128 S.Ct. 1396, 1402 n. 2, 170 L.Ed.2d 254 (2008).

3. 9 U.S.C. § 9. *See Mattel,* 552 U.S. at 581–82, 128 S.Ct. at 1402 ("As for jurisdiction over controversies touching arbitration, the Act does nothing, being 'something of an anomaly in the field of federal-court jurisdiction' in bestowing no federal jurisdiction but

the parties' "General Terms Agreement" ("Agreement") and the arbitration proceeded before Honorable John J. Specia, Jr. in his offices in San Antonio, Texas, within this District.

## II. PROCEDURAL HISTORY AND SUMMARY OF ALLEGATIONS

### A. Summary of Procedural History in SA–09–CA–693–XR

Plaintiff, MPJ, My Personal Jet, A.V.V. ("MPJ") initiated this case in this Court on August 24, 2009, when it filed its "Motion for Order Confirming Arbitration Award" and 18 exhibits in support.[4] In brief, MPJ alleges that MPJ and Aero Sky entered into an Agreement on or about January 13, 2006, under which Aero Sky, located in San Antonio, agreed to perform a scheduled maintenance program on MPJ aircraft for a "capped" price of $1,250,000, which MPJ agreed to pay in progress payments. The Agreement contained an arbitration clause.

Following proceedings in an earlier case, summarized below, the parties did arbitrate their dispute, before the Honorable John J. Specia, a then-retired Bexar County District Judge, in San Antonio, Texas. The parties' engagement agreement for Judge Specia's services as arbitrator included an agreement that the parties

"agreed to a resolution through arbitration pursuant to the provisions of the Federal Arbitration Act ("FAA")."[5] Following a telephonic conference on November 11, 2007, Judge Specia ordered by letter dated December 7, 2007, that the arbitration would proceed according to the American Arbitration Association's ("AAA") "Commercial Arbitration Rules to govern procedural parts of this proceeding."[6] The parties memorialized their agreements on pre-arbitration hearing matters, to include dates for exchanging statements of claims and responses, discovery, and designation of expert witnesses.[7] The arbitration hearing began on February 18, 2009, with evidence presented on February 18 and 19, 2009, and April 8, 2009; the hearing concluded on April 8, 2009.[8] No party requested a court reporter or record of the hearing and none was made.[9]

After the conclusion of the hearing, but before Judge Specia entered his final ruling, on June 15, 2009, Aero Sky asked Judge Specia to re-open the evidence to allow Aero Sky's principal, Mr. Bernard Fourrier, to testify about an alleged Federal Aviation Administration investigation of MPJ's expert witness, Mr. Francis Iniekpo "directed at the revocation of his license due to false entries in maintenance documentation."[10] Judge Specia declined

---

rather requiring an independent jurisdictional basis. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25, n. 32, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *see, e.g.*, 9 U.S.C. § 4 (providing for action by a federal district court 'which, save for such [arbitration] agreement, would have jurisdiction under title 28.' ")) (note omitted).

4. Docket no. 1. On September 15, 2009, in response to a "deficiency notice" from the Clerk's Office, MPJ submitted a proposed order to accompany its motion to confirm. Docket no. 9.

5. Docket no. 1, exhibit 8.

6. *Id.*, exhibit 9.

7. *Id.*, exhibit A at 7, ¶ 17; exhibit B at 3, 4; and exhibit 10

8. *Id.*, exhibit A at 8, ¶ 20; exhibit B at 4.

9. *Id.*, exhibit A at 8, ¶ 21; exhibit B at 4.

10. *Id.*, exhibit 11; *see also id.*, exhibit A at 8, ¶ 22. On June 22, 2009, MPJ opposed the request to re-open evidence, arguing, among other things: (1) Mr. Fourrier would appear to have only second-hand or inadmissible hearsay evidence about any pending FAA investigation of Mr. Iniekpo; (2) the FAA com-

to re-open the evidence for Mr. Fourrier's testimony.[11]

Judge Specia issued his Award, including findings of fact and conclusions of law ("Award") on July 17, 2009, ordering Aero Sky to pay MPJ $456,292.32 within fifteen days of the Award.[12] On July 21, 2009, MPJ asked Judge Specia to correct the Award to reflect that the text of the Award requires Aero Sky to pay prejudgment interest, such that the computation of the total amount awarded should be corrected to $499,058.66.[13] The same day, Aero Sky asked Judge Specia to re-evaluate the evidence on the merits.[14] On August 20, 2009, Judge Specia entered an Amended Award with the revised total amount awarded of $499,058.66, to include the pre-

judgment interest, with no changes in any of the findings of fact or conclusions of law.[15] The monetary amount awarded, due and payable within fifteen days of the issuance of the August 20, 2009 amended Award, remains unpaid.

Following issuance of summons and service, on September 3, 2009, defendant Aero Sky, L.L.C. ("Aero Sky") filed its combined response to MPJ's motion to confirm and cross-motion to modify or vacate the arbitration award, with two exhibits in support.[16] On September 14, 2009, MPJ filed its response to the cross-motion to modify or vacate, with seven exhibits in support.[17] On September 24, 2009, Aero Sky filed its reply on its counter-motion to modify or vacate, with one exhibit in sup-

plaint against Mr. Iniekpo was made or prompted by Avstar after Mr. Iniekpo, on October 29, 2007, filed suit in *Francis Iniekpo dba FEMA Group v. Avstar Int'l Corp. & Giri Valliappan*, SA–07–CA–879–XR, seeking approximately $99,000 in payment for work performed; (3) the allegations against Mr. Iniekpo have been matters of public record at least since Avstar filed its counterclaim on July 18, 2008, asserting a failure to perform the work and misrepresentations about authorizations, a date well in advance of the evidentiary hearing in the arbitration; (4) the evidence is offered to impeach Mr. Iniekpo, cumulative of other efforts to impeach him at the hearing, and impeachment is not an accepted ground to re-open evidence under *Hoyt R. Matise Co. v. Zurn*, 754 F.2d 560, 568 (5th Cir.1985); and (5) under the Commercial Arbitration Rule, R–36, the evidence may not be re-opened if it would delay the final award beyond the agreed-upon date and the request to re-open was filed after the 30–day period prescribed for the issuance of the award. *Id.*, exhibit 12.

11. *Id.*, exhibit A at 8, ¶ 22; exhibit 13.

12. *Id.*, exhibit 14.

13. *Id.*, exhibit 15.

14. *Id.*, exhibit 16.

15. *Id.*, exhibit 18. For clarity, all references to the "Award" in this report are to the operative, amended Award unless, by context, it is clear that the Court is referring to the amount awarded in the original Award, before Judge Specia made the computational corrections to include an award of a specific sum of prejudgment interest implemented in the corrected Award.

Also for clarity, the Court has noted that MPJ submitted two copies or versions of "Supporting Facts and Evidence Requiring Confirmation." One version, apparently an earlier draft, appears behind a cover sheet labeled as exhibit A to MPJ's motion to confirm, and indicates, as of the time the document was prepared, Judge Specia had not yet ruled on MPJ's motion to correct the computation or Aero Sky's motion to reevaluate the evidence. *Id.* exhibit A at 9–10. Another version, includes references to Judge Specia's amended Award, and appears immediately after the last page of the motion and before the cover sheet to exhibit A. Also, as noted, MPJ's exhibits to its motion include the amended Award and its cover letter which indicates that Judge Specia corrected the computation but all findings and conclusions "remain the same." *Id.*, docket no. 18.

16. Docket no. 5.

17. Docket no. 7.

port.[18] On September 30, 2009, MPJ filed its "objection" to Aero Sky's reply, which "objects" to matters addressed in Aero Sky's six-page reply and includes a motion to strike the single exhibit attached to the reply.[19] The docket sheets do not show that Aero Sky has responded to the motion to strike or other arguments in support of MPJ's "objection."

## B. Summary of Procedural History in SA–07–CA–276–XR

This proceeding follows an earlier proceeding in this Court between the parties regarding their arbitration agreement. The Court includes information on the earlier case for context and to the extent the matters reflected in the public record file of that earlier proceeding are items of which this Court may properly take judicial notice:

After the parties entered into their January 13, 2006 Agreement, a dispute arose between MPJ and Aero Sky regarding the scheduled maintenance work to be performed on MPJ aircraft by Aero Sky. On September 20, 2006, MPJ filed a demand for arbitration with the International Centre for Dispute Resolution ("ICDR") which included claims for an accounting and request for refund, breach of contract/warranty, and fraud. The relief requested by MPJ included a refund of labor charges imposed by Aero Sky and recovery of parking charges MPJ had paid to park the aircraft near Aero Sky's San Antonio facility before the work began, charges which, MPJ alleged, Aero Sky had falsely stated were reimbursement of actual charges imposed by the San Antonio Airport, when there were no such charges. Aero Sky refused to arbitrate before the ICDR.

On March 29, 2007, MPJ filed a "petition for order compelling mediation," docketed in SA–07–CA–276–XR. Aero Sky moved to dismiss for lack of subject matter jurisdiction on the ground the amount in controversy was less than $75,000. After the District Judge denied Aero Sky's motion to dismiss, Aero Sky filed its answer. On August 24, 2009, the parties filed with the Court a "Stipulation Appointing Arbitrator and Motion for Order Adopting Stipulation" ("Stipulation") in which, in sum, the parties agreed to arbitrate their disputes before Judge Specia. The Stipulation further provided that the parties would

> confer with Judge Specia regarding the rules and procedures to be followed in connection with the arbitration, and the arbitration will be governed by such rules and procedures determined by Judge Specia with input from the parties. The arbitration award rendered by Judge Specia shall be final and binding.[20]

This Court adopted the Stipulation, appointed Judge Specia as the mediator, dismissed the motion to compel arbitration as moot, and the case was closed.

## III. ISSUES PRESENTED

· Whether the Award should be confirmed, or vacated because:

(1) it was procured by corruption, fraud or undue means; (2) there was evident partiality in the arbitrator; (3) there was misconduct on the part of the arbitrator in refusing to hear evidence pertinent and material to the controversy to the prejudice of Aero Sky's rights; [and/or] (4) the arbitrator exceeded his powers by so imperfectly executing his authority that a mutual, final and defi-

---

**18.** Docket no. 11.

**19.** Docket no. 12.

**20.** SA–07–CA–276–XR, docket no. 16 at 1–2, Stipulation (Oct. 9, 2007); *cf., id.,* docket no. 17, Order adopting Stipulation (Oct. 9, 2007).

nite award upon the subject matter was not made; [21] and/or

· Whether the Award should be modified "pursuant to Article 11 of the [FAA] because the arbitrator has awarded upon matters not submitted to him which affected the merits of the decision, specifically fraud and the parking fee agreement." [22]

## IV. STANDARDS REGARDING CONFIRMATION OR VACATION OF ARBITRATION AWARDS

The FAA creates a "federal policy favoring arbitration." [23] The FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." [24] The FAA also provides for a stay of proceedings if a court finds that an issue is arbitrable under the terms of an applicable arbitration agreement. [25] Furthermore, the FAA authorizes courts to compel arbitration when "there has been a failure, neglect, or refus-

al to comply with the arbitration agreement." [26]

■■■ When a court is asked to confirm, vacate, or modify an arbitration award, the United States Supreme Court has held that the proceedings should receive "streamlined treatment" and "expedited review." [27] The United States Supreme Court has determined the standard of review a court of appeals must follow when reviewing a district court's decision refusing to vacate or confirming an arbitration award under §§ 10 and 9 of the FAA, respectively, includes "accepting findings of fact that are not 'clearly erroneous' but deciding questions of law *de novo*." [28] "Normally, the district court's review of an arbitration award, under the [FAA] is 'extraordinarily narrow.'" [29] *Vacatur* of arbitral awards under the FAA should occur only in "unusual circumstances." [30] "Thus, whatever indignation a reviewing court may experience in examining the record, it must resist the temptation to condemn imperfect proceedings without a sound statutory basis for doing

21. Docket no. 5 at 1.

22. *Id.* at 1–2.

23. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24, 103 S.Ct. at 941.

24. 9 U.S.C. § 2.

25. 9 U.S.C. § 3.

26. 9 U.S.C. § 4.

27. *Mattel*, 552 U.S. 576, 582, 128 S.Ct. 1396, 1402 (2008) ("The Act also supplies mechanisms for enforcing arbitration awards: a judicial decree confirming an award, an order vacating it, or an order modifying or correcting it. §§ 9–11. An application for any of these orders will get streamlined treatment as a motion, obviating the separate contract action that would usually be necessary to enforce or tinker with an arbitral award in court. § 6. Under the terms of § 9, a court

'must' confirm an arbitration award 'unless' it is vacated, modified, or corrected 'as prescribed' in §§ 10 and 11.") (note omitted).

28. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 947–48, 115 S.Ct. 1920, 1926, 131 L.Ed.2d 985 (1995); *Harris v. Parker Coll. of Chiropractic*, 286 F.3d 790, 791 (5th Cir. 2002).

29. *Prescott v. Northlake Christian Sch.*, 369 F.3d 491, 494 (5th Cir.2004) ("Normally, the district court's review of an arbitration award, under the Federal Arbitration Act ("FAA"), is "extraordinarily narrow." *Antwine v. Prudential Bache Sec., Inc.*, 899 F.2d 410, 413 (5th Cir.1990) (stating that, under FAA, 'courts should defer to the arbitrator's decision when possible') (citations omitted)") (note omitted).

30. *First Options*, 514 U.S. at 944, 115 S.Ct. at 1924.

so." [31]

■ Pursuant to § 9 of the FAA,[32] the Court must confirm the Award unless it determines that it should be vacated under § 10, or modified or corrected under § 11.[33] Section 9 addresses the confirmation of an arbitration award, including procedures and jurisdiction, providing in part:

If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made.[34]

■ Sections 10 and 11 of the FAA provide the "exclusive grounds for expedited *vacatur* and modification" [35] of an arbitration award. "The statutory bases for overturning ... are precisely and narrowly drawn to prohibit ... complete *de novo* review of the substance of the award as distinguished from gross calculation errors or inadequacies in the makeup of the tribunal itself." [36] The Court's focus is "whether the arbitration proceedings were fundamentally unfair." [37] The party moving to vacate has the burden of proof.[38]

■ Section 10(a) addresses the circumstances in which a court may vacate an arbitration award:

(a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

(1) where the award was procured by corruption, fraud, or undue means;

FAA is not the only way into court for parties wanting review of arbitration awards: they may contemplate enforcement under state statutory or common law, for example, where judicial review of different scope is arguable. But here we speak only to the scope of the expeditious judicial review under §§ 9, 10, and 11, deciding nothing about other possible avenues for judicial enforcement of arbitration awards. *Id.* at 590, 128 S.Ct. at 1406.

**31.** *Forsythe Int'l. S.A. v. Gibbs Oil Co. of Texas,* 915 F.2d 1017, 1022 (5th Cir.1990).

**32.** 9 U.S.C. § 9.

**33.** *See Mattel,* 552 U.S. at 581–82, 128 S.Ct. at 1402.

**34.** 9 U.S.C. § 9.

**35.** *Mattel,* 552 U.S. at 583–85, 128 S.Ct. at 1403. *Mattel* resolved a split in the Circuits as to whether the parties could agree to expand the statutory grounds to confirm, vacate, or modify and award, determining: "We now hold that §§ 10 and 11 respectively provide the FAA's exclusive grounds for expedited *vacatur* and modification." *Id.* Later, Justice Souter, writing for the majority, observed:

In holding that §§ 10 and 11 provide exclusive regimes for the review provided by the statute, we do not purport to say that they exclude more searching review based on authority outside the statute as well. The

**36.** *Legion Ins. Co. v. Insurance Gen. Agency, Inc.,* 822 F.2d 541, 543 (5th Cir.1987).

**37.** *Gulf Coast Indus. Worker's Union v. Exxon Co., USA,* 70 F.3d 847, 850 (5th Cir.1995) (citation omitted); *see Forsythe,* 915 F.2d at 1020–21.

**38.** *See Trans Chemical Ltd. & China Nat'l Machinery Import & Export Corp.,* 978 F.Supp. 266, 303 (S.D.Tex.1997), *aff'd,* 161 F.3d 314 (5th Cir.1998).

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.[39]

Section 11 addresses the circumstances in which a court may modify or correct an arbitration award:

the United States court in and for the district wherein the award was made may make an order modifying or correcting the award upon the application of any party to the arbitration—

(a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.

(b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.

(c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

The order may modify and correct the award, so as to effect the intent thereof

and promote justice between the parties.[40]

In reviewing the "narrow circumstances" to vacate or modify an arbitration award, the Court is to give considerable deference to the arbitrator's determinations.[41]

## V. ANALYSIS

### A. Summary of Arguments

MPJ has moved for confirmation of the Award.[42] As noted, pursuant to § 9 of the FAA, the Court must confirm the Award unless it determines that it should be vacated under § 10, or modified or corrected under § 11. MPJ argues, in sum, this Court has jurisdiction, venue is proper in this Court, the FAA and federal law applies, and there is no just reason why the Award, as amended, should not be confirmed expeditiously.

In response, Aero Sky has cross-moved to vacate and modify the Award. Aero Sky does not contest that the FAA and federal law governs the arbitration conducted regarding Aero Sky and MPJ's contract involving international commerce, and references the FAA in framing its requests for *vacatur* and modification of the Award. Aero Sky lists four grounds for vacating the Award pursuant to § 10 of the FAA:

(1) it was procured by corruption, fraud or undue means; (2) there was evident partiality in the arbitrator; (3) there was misconduct on the part of the arbitrator in refusing to hear evidence pertinent and material to the controversy to the prejudice of Aero Sky's rights; [and/or] (4) the arbitrator exceeded his powers by so imperfectly executing his

---

**39.** 9 U.S.C. § 10(a).

**40.** 9 U.S.C. § 11.

**41.** *First Options*, 514 U.S. at 943, 115 S.Ct. at 1923–24 ("That is to say, the court should give considerable leeway to the arbitrator, setting aside his or her decision only in certain narrow circumstances.") (citations omitted).

**42.** Docket no. 1.

authority that a mutual, final and definite award upon the subject matter was not made.[43]

Aero Sky's supporting argument is not divided up into sub-sections, but it appears the arguments in support of each of the four grounds can be fairly summarized as follows:

Aero Sky argues the Award "was procured by corruption, fraud or undue means," as addressed in § 10(a)(1), based on the affidavit of John Economus submitted in support of Aero Sky's request to modify or vacate. Aero Sky argues that it "has suspected for quite some time that MPJ and its principal, Mr. Ashley Flynn, were involved with Francis Iniekpo, the purported expert witness in this case, and others in a conspiracy to perpetrate a

fraud against Aero Sky and that this entire arbitration proceeding was a part of that fraud." [44] Aero Sky represents this "[e]vidence has just come into the possession of Aero Sky which proves that its suspicion is true." [45] In his September 3, 2009 affidavit, Mr. Economus, who is not otherwise identified, testifies Mr. Flynn told him that he "was working on a plan to take over Aero Sky" and "was working with Francis Iniekpo and Hector Ramirez" at the time Mr. Ramirez "was employed at Aero Sky." [46] The time Mr. Flynn made the comments to Mr. Economus is not specified, other than that they apparently were made during one of the "numerous conversations … began while the aircraft in question was undergoing maintenance by Aero Sky." [47]

43. Docket no. 5 at 1.

44. *Id.* at 2.

45. *Id.*

46. *Id.* at 2 and exhibit A at 1–2.

47. *Id.* Mr Economus also testifies: "I also accompanied Ashley Flynn to San Antonio when he met with a man named Kelsey. I later learned he paid each of these men $10,000 to help him with the case." *Id.* Mr. Economus' affidavit does not clearly identify the "he" who paid "each of these men," iden.tify "each of these men" who he learned received the alleged payment (Mr. Iniekpo, Mr. Ramirez and/or Mr. Kelsey), state when the payment was made, identify the specific "case" or matter in the payment made, state how Mr. Economus "learned" the information, or state the supporting reasons why Mr. Economus believes the payment was illegal, improper, or evidence that the Award "was procured by corruption, fraud or undue means." *Id.*

The Court has noted that Mr. Fourrier testifies in his related affidavit that "a man from Houston who identified himself as an associate of Mr. Flynn's" contacted Mr. Fourrier after "the arbitration session" (without reference to date or any specific arbitration hearing date), who told Mr. Fourrier "he had evidence of a conspiracy directed by Mr.

Flynn to defraud Aero Sky, including the subornation of perjury in the arbitration." *Id.*, exhibit B at 5, ¶ 12. But, Mr. Fourrier does not identify the "man" or state the supporting reasons why Mr. Fourrier believes Mr. Economus' affidavit demonstrates "subornation of perjury in the arbitration." *Id.*

MPJ's response to the cross-motion to modify or vacate includes additional argument and testimony, through the attached declarations of Mr. Flynn, about Mr. Economus and Mr. Kelsey. *See* docket no. 7 at 3–4 and exhibits 1 & 2. Thus, for the purposes of this report, it is noted that MPJ contests the allegations and evidence of any improper payments, perjury, subornation of perjury or related ground to vacate the arbitration Award.

As a housekeeping matter, the Court notes MPJ has submitted two declarations from Mr. Flynn, one captioned "declaration," sworn before a notary on Sept. 14, 2009, and another captioned "unsworn declaration," represented to have been signed by Mr. Flynn (but is not dated). The substance of the testimony in each declaration appears to be identical. Although captioned as "unsworn," to be clear, that declaration does include the attestation set forth in 28 U.S.C. § 1746(1) for statements executed outside the United States. Footnote 1 on the table of contents to MPJ's exhibits in support of its response offers an explanation as to why it submits two

Aero Sky argues the Award should be vacated based on the arbitrator's refusal "to hear evidence pertinent and material to the controversy" [48] to the prejudice of Aero Sky's rights, as addressed in § 10(a)(3), namely, refusing to hear evidence of the fair market value of the maintenance work performed by Aero Sky on MPJ's aircraft, as detailed in a supporting affidavit of Mr. Fourrier.[49] Mr. Fourrier testifies, in sum, that the "arbitrator refused to hear evidence of the fair market value of the maintenance performed by Aero Sky on MPJ's aircraft" and "such evidence would have proven that the flat fee agreed to by MPJ was at least $500,000 to $1,000,000 lower than the fair market value of such maintenance at any other repair station in the United States," plus the additional "cost of upwards of $250,000 just to get the Aircraft into a condition that it could be flown safely to another location." [50] Aero Sky argues this evidence "would have proven

that the flat fee contract agreed to by MPJ was significantly lower than the going market price for such work and, accordingly, MPJ suffered no actual damages from any alleged fraud or breach of contract." [51] Later, Aero Sky argues the arbitrator also refused to hear evidence of the FAA's alleged investigation of Mr. Iniekpo "that he falsified maintenance records, failed to properly document aircraft maintenance and otherwise conducted maintenance improperly," relevant to his qualifications as an expert and credibility.[52] Contrary to MPJ's contention "in its Motion that Rule 46 of the Commercial Arbitration rules precluded the arbitrator's consideration of the evidence," "that Rule has no application in this case" because "[t]he parties never agreed to use the Commercial Arbitration Rules, nor did the arbitrator at any time advise the parties he intended to use such rules." [53]

declarations from Mr. Flynn. *See* docket no. 7, appendix, table of contents.

48. 9 U.S.C. § 10(a).

49. *Id.* at 2 and exhibit B. Again, Aero Sky's listing of four grounds for vacating the Award does not expressly include refusal "to hear evidence pertinent and material to the controversy," a ground noted in § 10(a)(3), as one of those grounds. But, as discussed further in this report, Aero Sky does list as grounds for vacating the Award: (a) the "evident partiality in the arbitrator," a ground listed in § 10(a)(2), based on his consideration of parking/storage fees and Mr. Iniekpo's testimony; and (b) "misconduct on the part of the arbitrator," a ground listed in § 10(a)(3), based on his refusal to consider evidence regarding the fair market value of work performed by Aero Sky and an alleged FAA investigation of Mr. Iniekpo. Each of Aero Sky's challenges to evidence considered or not considered by Judge Specia has been fully considered in connection with the recommendations made in this report.

50. *Id.,* exhibit B at 5–6, ¶ 13.

51. *Id.* at 2.

52. *Id.* at 3.

53. *Id. See also id.,* exhibit B at 4, ¶ 4 (Mr. Fourrier testifies: "Aero Sky never agreed to use the Commercial Arbitration Rules, nor did the arbitrator at any time advise the parties he intended to use such rules"). The Court has noted that in the parties' earlier case in this Court, MPJ's complaint alleged Aero Sky had notified MPJ on September 28, 2006, it would not agree to arbitration under the Commercial Arbitration rules. *See* SA–07–CA–2276, docket no. 8 at 8. But. Aero Sky's submissions in this case do not address further proceedings before Judge Specia, including exhibit 9 to MPJ's motion, a December 7, 2007 letter from Judge Specia to the attorneys that "order[ed] that we adopt the AAA Commercial Arbitration Rules to govern the procedural parts of this proceeding" and invoked Rule 54 of those rules with respect to a matter relating to fees. *See* docket no. 1, exhibit 9. Aero Sky does not show Judge Specia re-determined the matter to hold the AAA Commercial Arbitration Rules would not apply. Accordingly, Aero Sky's contention that it "never agreed to use the Commercial Arbitration Rules, nor did the arbitrator at any time advise the parties he intended to use

Aero Sky argues the arbitrator "exceeded his powers by so imperfectly executing his authority that a mutual, final and definite award upon the subject matter was not made," as addressed in § 10(a)(4), because the arbitrator: (a) admitted and considered the expert testimony of Mr. Iniekpo and/or (b) "complete[ly] disregard[ed] the evidence regarding parking fees." [54] With respect to Mr. Iniekpo's testimony, Aero Sky argues the arbitrator "completely ignored his role as gate keeper with regard to purported expert testimony and allowed MPJ to present testimony by Francis Iniekpo that failed to meet even the most basic standards of admissibility," [55] and "either did not conduct a *Daubert* type analysis or did so while totally disregarding the pertinent evidence." [56] Aero Sky argues that MPJ's breach of contract claim "relied solely on the expert testimony of Francis Iniekpo," but he "was a co-conspirator in the fraud perpetrated by MPJ in this case," and "[h]is testimony was also based on a non-scientific, unrecognized, untested and unreliable methodology" [57] because he:

had never seen the aircraft in question while the maintenance was being performed, had not witnessed any of the maintenance and had spoken to only two employees involved in the maintenance[,]

... had no knowledge of the condition of the aircraft, the nature of the defects discovered and rectified during the maintenance, or the actual amount of labor that was performed.[58]

Aero Sky argues Mr. Iniekpo "simply substituted his own opinions for how long certain tasks should have taken based on maintenance documentation from Boeing that was thirty years old and applicable only to new aircraft," [59] but

[t]here was no evidence that the publications Mr. Iniekpo relied upon could be reliably used in the manner in which he used them, his methodology was created simply for use in this litigation, ... there was no way to verify the accuracy of his methodology[, and] Mr. Iniekpo had the opportunity to check the accuracy of his estimates using subsequent maintenance events on this very airplane, and had not even attempted to do so.[60]

Further, Aero Sky argues Judge Specia exceeded his powers by considering MPJ's allegations of fraud "never agreed to arbitrate a fraud claim and the arbitrator exceeded his evidence by hearing evidence of the fraud issues, ruling that the fraud claims were arbitrable and issuing an award based, at least in part on the fraud claims." [61] Later, Aero Sky argues that

such rules" is given little further consideration in this report.

54. Docket no. 5 at 5.

55. *Id.* at 3.

56. *Id.* at 2–3.

57. *Id.* at 3–4.

58. *Id.* at 4.

59. *Id.*

60. *Id.*

61. *Id.* at 3. The first two sentences of the Award and Amended Award, under the caption "Award" are, in part:

The claims of MPJ against Aero Sky for request of **breach of contract** are granted. I find that MPJ is entitled to recover of and from Aero Sky, and I order that Aero Sky pay to MPJ within 15 days from the date of this Award, the sum of [$499,058.55] ....

Docket no. 1, exhibits 14 and 18 (emphasis added). As noted, the purpose of the issuance of the corrected Award was to correct the total sum of money awarded, denoted in the bracketed text above. To be clear, the listing of categories of "actual damages" following the sum awarded, as well as the findings and

"the only way the arbitrator could negate the parking fees for MPJ was to find fraud." [62] Aero Sky argues the "fair market price for parking at the airport ... was somewhere around $150.00 [per day]," and it "certainly was not zero, as found by the arbitrator." [63]

Aero Sky argues the Award should be vacated based on the arbitrator's "evident partiality," as addressed in § 10(a)(2), because of "[t]he arbitrator's complete disregard of the evidence regarding the parking fees, coupled with his admission of the expert testimony of Mr. Iniekpo." [64]

Additionally, Aero Sky presents one ground for modifying the award pursuant to Article 11 of the FAA: "because the arbitrator has awarded upon matters not submitted to him which affected the merits of the decision, specifically fraud and the parking fee agreement." [65] Aero Sky argues it "never agreed to submit to arbitration any fraud claim, nor did it agree to submit a separate agreement relating to parking fees for this Aircraft to arbitration." [66] In support, Aero Sky references the attached affidavit of Mr. Fourrier, without reference to specific page or paragraph of that affidavit. A portion of Mr. Fourrier's affidavit refers to the clause in

Annex C to the parties' Agreement regarding MPJ's obligation to pay for

parking/storage charges if the aircraft remains with Aero Sky for more than three (3) days after the date the aircraft is available to be released to MPJ ... at the rate charged by the San Antonio International Airport (which currently is USD $150.00 per day per aircraft) plus 10% handling fee," [67]

but Mr. Fourrier testifies "that clause never came into play because MPJ picked up the Aircraft in a timely manner.[68] Mr. Fourrier's affidavit otherwise does not address parking fees apparently charged by Aero Sky to MPJ or discuss why the arbitrator's calculation and award to MPJ of $48,350.00 for "[a]irport parking charges" [69] was incorrect.

MPJ has filed a response to Aero Sky's cross-motion to vacate,[70] to which Aero Sky filed a reply,[71] to which MPJ objected.[72] Each of the arguments in these documents have been fully considered in the preparation of this report, but are not summarized in detail in this report.

## B. Discussion

### 1. Agreement to Arbitrate

▇ Generally, when determining whether to compel arbitration, vacate,

---

conclusions accompanying the original Award, were not changed in the amended Award and make no reference to any sum or amount of money awarded on account of a "fraud claim." Both the Award and corrected Award did include $48,350.00 for "[a]irport parking charges." *Id.*, exhibit 14 at 2, exhibit 18 at 2.

62. Docket no. 5 at 4–5.

63. *Id.* at 5.

64. *Id.*

65. *Id.* at 1–2.

66. *Id.* at 5.

67. Docket no. 1, exhibit 1 at 27, ¶ 3(a); see docket no. 5, exhibit B at 3, ¶ 7.

68. Docket no. 5, exhibit B, at 3, ¶ 7. Paragraph 3(a) in Annex C to the Agreement also addresses at least one other situation in which parking fees could apply as well as the fee for storing the aircraft in a hangar. Docket no. 1, exhibit 1 at 27, ¶ 3(a).

69. Docket no. 1, exhibit 14 at 2; exhibit 18 at 2

70. Docket no. 7.

71. Docket no. 11.

72. Docket no. 12.

modify or enforce an arbitration award, courts should first determine whether the parties agreed to arbitrate the dispute and then whether the issues raised are within the scope of that agreement.[73] Here, the underlying Agreement governing the maintenance work to be performed by Aero Sky, entered into by the parties as of January 13, 2006, includes an arbitration clause. Article 15, paragraph 6 of that Agreement provides:

6. *Arbitration:*

All disputes arising in connection with the present Agreement shall be amicably settled. Should this procedure fail, the dispute shall be settled according to the rules of conciliation and arbitration (Bexar County) the STATE OF TEXAS, by one or more arbitrators, appointed in accordance with the said rules, in English language.

Any award rendered by the arbitral tribunal shall be final, binding and shall not be called in question in any court of law or judicial forum. The parties should take the appropriate action as may be required under the applicable law for the enforcement of such award.[74]

As threshold matters, no party raises a question about meeting the FAA §§ 1 and 2 requirements "that the [Agreement for scheduled aircraft maintenance work] from which the dispute arose [is] a contract 'involving commerce,' "[75] or that Aero Sky's work on MPJ's aircraft pursuant to the parties' Agreement affects commerce.[76] MPJ's case-initiating "Motion for Order Confirming Arbitration Award" makes it clear that this is "an FAA case."[77] To the extent required, the Court concludes the Agreement between MPJ and Aero Sky involves "commerce" as defined by the FAA such that federal arbitration law governs the Court's review.[78] Although the Agreement, in article 15, paragraph 6, referred to "rules of conciliation and arbitration of (Bexar County) the State of Texas," and Mr. Fourrier testifies "there was no discussion between Aero Sky and MPJ as to the meaning of the provision or the intention of the parties" and he does "not know what the phrase … means,"[79] MPJ initiated its demand to arbitrate in SA–07–

---

**73.** *Texaco Exploration & Prod. Co. v. AmClyde Engineered Prod. Co. Inc.,* 243 F.3d 906, 909 (5th Cir.2001); *Harvey v. Joyce,* 199 F.3d 790, 793 (5th Cir.2000).

**74.** Docket no. 1, exhibit A, at 19, ¶ 6.

**75.** *Id.* (citing 9 U.S.C. § 2; *Allied–Bruce Terminix Co. v. Dobson,* 513 U.S. 265, 277, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995) (§ 2 "exercise[s] Congress' commerce power to the full")).

**76.** On August 24, 2007, the District Judge denied Aero Sky's motion to dismiss MPJ's motion to compel arbitration filed in their earlier case in this Court, finding, among other things, this Court had diversity jurisdiction because the amount in controversy exceeded $75,000. *See* SA–07–CA–276–XR, docket no. 8 at 3–7, Order (Aug. 24, 2007). Both the contract amount and the amended Award at issue well exceed $75,000. Aero Sky did not

dispute there was complete diversity between the parties. *Id.* at 2. MPJ is alleged to be an entity formed under the laws of Aruba with its principal place of business in Dubai, United Arab Emirates; Aero Sky is alleged to be a Texas limited liability company with its principal place of business in San Antonio.

**77.** *Mattel,* 552 U.S. at 590, 128 S.Ct. at 1407.

**78.** *See Atlantic Aviation, Inc. v. EBM Group, Inc.,* 11 F.3d 1276, 1280 (5th Cir.1994).

**79.** Docket no. 5, exhibit B at 3–4, ¶¶ 8–9. In the parties' earlier case in this Court, Mr. Scott Wilson, the Director for Marketing for Aero Sky, similarly testified regarding article 15, paragraph 6, that there was "no discussion as to the meaning of the provision or the intention of the parties. I do not know what the phrase … means." SA–07–CA–276–XR, docket no. 3 at 4, Aero Sky's motion to dismiss (June 6, 2007).

CA–276–XR invoking the FAA and the parties' Stipulation to arbitrate states:

a controversy has arisen between the parties hereto and the parties have agreed to a resolution through arbitration pursuant to the provisions of the Federal Arbitration Act ("FAA").[80]

The Stipulation was signed by all parties and their counsel, was submitted to the Court in support of a request to close SA–07–CA–276–XR, and was relied upon by the Court for that purpose. Thus, the parties expressly agreed the FAA was the governing law for the arbitration apart from other case authority demonstrating its suitability,[81] and Aero Sky has demonstrated no reason why it should be entitled to contest the applicability at this time or why the FAA should not apply.

Although the parties previously disagreed as to the requirement to arbitrate in their earlier case in this Court, that case was closed after the Court accepted their Stipulation to arbitrate and Judge Specia agreed to serve as arbitrator. Neither MPJ nor Aero Sky contend in this proceeding they were not required to arbitrate their disputes *relating to the Agreement.*

Aero Sky does argue it "never agreed to submit to arbitration any fraud claim, nor did it agree to submit a separate agreement relating to parking fees for this Aircraft to arbitration."[82] Stated differently, Aero Sky contends the dispute regarding aircraft parking/storage fees charged MPJ by Aero Sky for parking *prior* to the date of their Agreement should not be considered to be a "dispute[ ] arising in connection with the present Agreement."[83] Accordingly, Aero Sky asserts the arbitrator decided matters outside the scope of the arbitration clause when he addressed and awarded parking/storage fees. But, other than its "say so," Aero Sky presents no argument or authority in support of its position that aircraft parking/storage fees—either those addressed in Annex C to the Agreement or as charged to MPJ by Aero Sky for parking/storing before the date of the Agreement—were outside the scope of the arbitration clause and not properly considered in by the arbitrator.

Significantly, the parties' Stipulation to arbitrate, filed and approved by the District Judge in SA–07–CA–276–XR, indicates, in part, the parties' agreement to arbitrate "the disputes set forth in the Petition" filed in SA–07–CA–276–XR.[84] An attachment to the "Petition for Order Compelling Arbitration" in SA–07–CA–276–XR was "Claimant's Statement of Claims" that included, at pages 11 and 12, a discussion of parking/storage charges for

---

**80.** Docket no. 1, exhibit 8 at 3.

**81.** To the extent the references to Bexar County and Texas in the arbitration clause in the parties' Agreement suggest the Texas Arbitration Act should apply, instead of or concurrently with the FAA (to the extent that Act would not conflict with the FAA), *see* docket no. 1 at 5 n. 1 & at 6 n. 2, Aero Sky has not argued the Texas Arbitration Act should apply or demonstrated how application of the Texas Arbitration Act would lead to a different result. *See In the Matter of Arbitration Between Trans Chem. Ltd. and China Nat. Machinery Import & Export Corp.*, 978 F.Supp. 266, 303 & n. 157 (S.D.Tex.1997) ("The TGAA's *vaca-*

*tur* provision on which CNMC relies, Tex.Rev. Civ. Stat. Ann. art. 237, is 'substantially similar to section 10 of the Federal Arbitration Act.' *TUCO, Inc. v. Burlington N. R.R. Co.*, 912 S.W.2d 311, 315 (Tex.App.-Amarillo 1995), *modified on other grounds and remanded*, 960 S.W.2d 629, 1997 WL 336314 (Tex. June 20, 1997)."), *aff'd Trans Chem. Ltd. v. China Nat. Machinery Import & Export Corp.*, 161 F.3d 314 (5th Cir.1998).

**82.** Docket no. 5 at 5.

**83.** Docket no. 1, exhibit 1 at 19.

**84.** *Id.*, exhibit 5

the aircraft before the date of the Agreement.[85] Aero Sky presents no argument or authority to show that the first exhibit attached to the "Petition" in SA–07–CA–276–XR should not be considered as part of the "Petition" and claims Aero Sky agreed to arbitrate. In other words, contrary to Aero Sky's arguments now, Aero Sky *stipulated* to the arbitration of MPJ's claim it was over-charged for pre-Agreement parking/storage charges for the aircraft as a "dispute[ ] arising in connection with the present Agreement."[86] Aero Sky also has not demonstrated that storage/parking paid prior to the date of the Agreement would not be properly considered in an arbitration of their disputes under the Agreement as a possible off-set to any moneys MPJ owed to Aero Sky under the Agreement. Aero Sky has not demonstrated that parking/storage charges allegedly incurred by MPJ prior to the date of the Agreement were not incurred in connection with the Agreement, as determined by Judge Specia, or did not arise from the same facts as the contract claim considered in the arbitration.[87] Thus, the parties' dispute relating to parking/storage charges for the aircraft is arbitrable under the arbitration clause in the parties' Agreement, the parties'

Stipulation to arbitrate, or § 3 of the FAA.[88]

## 2. Grounds to Vacate

Aero Sky argues there is evidence of each of the four general grounds for vacating an arbitration award noted in § 10 of the FAA, such that this Award must be vacated:

(1) it was procured by corruption, fraud or undue means [§ 10(a)(1) ]; (2) there was evident partiality in the arbitrator [§ 10(a)(2) ]; (3) there was misconduct on the part of the arbitrator in refusing to hear evidence pertinent and material to the controversy to the prejudice of Aero Sky's rights [§ 10(a)(3) ]; [and/or] (4) the arbitrator exceeded his powers by so imperfectly executing his authority that a mutual, final and definite award upon the subject matter was not made [§ 10(a)(4) ].[89]

Again, this report has fully considered each party's submissions, including briefs and exhibits. This portion of the report summarizes the key arguments presented by Aero Sky in support of its request for *vacatur*.

---

**85.** SA–07–CA–276, docket no. 1, first attached exhibit at 11–12.

**86.** *Id.* at 19.

**87.** *See Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration*, 198 F.3d 88, 99 (2d Cir.1999) (rejecting argument that alleged pre-agreement misconduct fell outside agreement's arbitration clause, holding, "when we consider 'whether a particular claim falls within the scope of the parties' arbitration agreement, we focus on the factual allegations in the complaint rather than the legal causes of action asserted. If the allegations underlying the claims 'touch matters' covered by the parties' ... agreements, then those claims must be arbitrated, whatever the legal labels attached to them.' ") (citation omitted).

**88.** The record indicates the parties briefed the scope of the arbitration clause, and the specific question of whether parking/storage fees and a fraud claim relating to those fees were arbitrable, before Judge Specia. *See* docket no. 7, exhibit 6. Again, the arbitration clause provides that *"[a]ll* disputes arising in connection with the present Agreement" are subject to arbitration, *see* docket no. 1, exhibit A, at 19, ¶ 6 (emphasis added), supporting a conclusion that the parties "clearly" agreed to have the arbitrator determine arbitrability. *See First Options*, 514 U.S. at 946–47, 115 S.Ct. at 1925–26.

**89.** Docket no. 5 at 1.

### a. corruption, fraud or undue means [§ 10(a)(1) ]

Aero Sky argues the Award was procured by fraud or undue means based in part on the affidavits of Mr. Economus and Mr. Fourrier and Aero Sky's arguments that individuals associated with MPJ were involved in an alleged conspiracy to defraud Aero Sky and two conspirators, Mr. Iniekpo and Mr. Kelsey, received payment in connection with the "case." [90]

■■■■ To vacate an arbitration award based on corruption, fraud or undue means, Aero Sky must show there is a "nexus" between the alleged fraud or impropriety and the basis of the decision.[91] In *Trans Chemical Ltd.*, the district court, in an analysis adopted by United States Court of Appeals for the Fifth Circuit when affirming, set forth a summary of the relevant standards:

Under the FAA a party who alleges that an arbitration award was procured through fraud or undue means must demonstrate that the improper behavior was (1) not discoverable by due diligence before or during the arbitration hearing, (2) materially related to an issue in the arbitration, and (3) established by clear and convincing evidence. *E.g., Gingiss Int'l, Inc. v. Bormet*, 58 F.3d 328, 333 (7th Cir.1995); *A.G. Edwards & Sons, Inc. v. McCollough*, 967 F.2d 1401, 1404 (9th Cir.1992), *cert. denied*, 506 U.S. 1050, 113 S.Ct. 970, 122 L.Ed.2d 126 (1993); *Dean Foods Co. v. United Steel Workers of Am.*, 911 F.Supp. 1116, 1124

(N.D.Ind.1995); *Shearson Hayden Stone, Inc. v. Liang*, 493 F.Supp. 104, 108 (N.D.Ill.1980), *aff'd*, 653 F.2d 310 (7th Cir.1981). Although "fraud" and "undue means" are not defined in section 10(a) of the FAA, courts interpret the terms together. *See Shearson Hayden Stone*, 493 F.Supp. at 108. Fraud requires a showing of bad faith during the arbitration proceedings, such as bribery, undisclosed bias of an arbitrator, or willfully destroying or withholding evidence, *Indocomex Fibres Pte., Ltd. v. Cotton Co. Int'l, Inc.*, 916 F.Supp. 721, 728 (W.D.Tenn.1996); *Dean Foods v. United Steel Workers*, 911 F.Supp. at 1124. Similarly, undue means connotes behavior that is "immoral if not illegal" or otherwise in bad faith. *A.G. Edwards*, 967 F.2d at 1403–04; *Shearson Hayden Stone*, 493 F.Supp. at 108. *See also American Postal Workers Union v. United States Postal Serv.*, 52 F.3d 359, 362 (D.C.Cir.1995) (In the labor arbitration context "undue means must be limited to an action by a party that is equivalent in gravity to corruption or fraud, such as a physical threat to an arbitrator or other improper influence."). Section 10(a)(1) also requires a nexus between the alleged fraud or undue means and the basis for the arbitrators' decision. *Forsythe*, 915 F.2d at 1022; *A.G. Edwards*, 967 F.2d at 1403.[92]

■■■ Here, Aero Sky has not demonstrated the challenged behavior was (1) not discoverable by due diligence before or

90. *Id.* at 2, exhibit A at 1–2 & exhibit B at 5, ¶ 12.

91. *Forsythe*, 915 F.2d at 1022 ("The statute does not provide for vacatur in the event of any fraudulent conduct, but only "where *the award was procured* by corruption, fraud, or undue means." 9 U.S.C. § 10(a) (emphasis added). We read this language as requiring a nexus between the alleged fraud and the basis

for the panel's decision.") (citations omitted) (emphasis in original).

92. 978 F.Supp. at 304 (note omitted). On appeal, the Fifth Circuit panel observed: "We agree with the district court's analysis of these issues and therefore adopt Parts I–V of its careful and comprehensive opinion" and affirmed the decision. 161 F.3d at 319.

during the arbitration hearing, (2) materially related to an issue in the arbitration, and/or (3) established by clear and convincing evidence. At the threshold, assuming the relevance of the testimony, the operative sections of Mr. Economus' affidavit are hearsay, in that he indicates he "learned" MPJ's principal paid three individuals $10,000 each, but does not state how he learned this information or when, provide facts to show his knowledge is not hearsay or speculation and was not discoverable by due diligence before or during the arbitration hearing; nor does Mr. Economus' affidavit provide factual specifics important to an evaluation of the relevancy and weight of his testimony, were it to be admitted, necessary to a determination of whether Aero Sky has satisfied the applicable "clear and convincing" standard.[93] Similarly, Mr. Fourrier testifies about his own, personal conclusion that "the entire arbitration proceeding was part of the fraud" that individuals associated with MPJ conspired to commit against Aero Sky based on "evidence" that "a man from Houston" told Mr. Fourrier "he had,"[94] but not the factual support that would allow the Court to conclude it was not inadmissible hearsay or speculation or, if it were to be admitted, to determine its weight. Standing on its own, Aero Sky's arguments and evidence of fraud fall well below a "clear and convincing" standard.

Further, after MPJ challenged portions of Mr. Economus' and Mr. Fourrier's affidavits, Aero Sky did not respond with rehabilitating evidence or argument. More specifically, MPJ submitted declarations from Mr. Flynn in which he testified, among other things: Mr. Flynn first met

Mr. Economus after the arbitration was completed, not before; neither he nor MPJ ever paid any money to Mr. Kelsey except a payment of approximately $150.00 made by counsel relating to witness expenses for attending the arbitration hearing—a payment that MPJ represents Judge Specia approved "in advance."[95] MPJ's response admits Mr. Iniekpo received an expert fee and contends it was Mr. Iniekpo's disclosed fee that Judge Specia *awarded* to MPJ at the conclusion of the arbitration. MPJ also admits Mr. Ramirez, a former Aero Sky employee, was paid a consulting fee (in the amount of $3,500, not $10,000, as contended by Aero Sky), but represents this fee, too, was disclosed in discovery.[96] MPJ also represents, without dispute, that only four witnesses testified at the arbitration—Mr. Flynn, Mr. Iniekpo, and Mr. Kelsey for MPJ, and Mr. Fourrier for Aero Sky. Aero Sky has not explained why it could not have, or did not, cross-examine Mr. Flynn, Mr. Iniekpo and Mr. Kelsey about any payments or why such cross-examination was not adequate to probe all issues relating to credibility relating to the alleged payments or bias. Aero Sky also has not explained how Mr. Ramirez, who allegedly received a payment but did not testify, influenced Judge Specia or the obtaining of the Award.

In sum, Aero Sky has not met its burden to demonstrate the Award was procured by corruption, fraud or undue means.

**b. evident partiality in the arbitrator [§ 10(a)(2) ]**

■ An arbitral award may be vacated based on evident partiality or corruption in an arbitrator. Aero Sky argues the arbi-

---

93. *See* note 47, above.

94. Docket no 5, exhibit B at 5, ¶¶ 11 and 12.

95. Docket no. 7 at 5 (emphasis omitted) & exhibits 1 and 1–A at 2–3.

96. Docket no. 7 at 2, 4 & exhibit 3; docket no. 1, exhibit 18, amended Award at 2, ¶ 4.

trator's "evident partiality" is shown by "[t]he arbitrator's complete disregard of the evidence regarding the parking fees, coupled with his admission of the expert testimony of Mr. Iniekpo." [97] Aero Sky has not demonstrated that Judge Specia acted or failed to act in any way that demonstrates "evident partiality" or, to the extent implicitly raised, "corruption."

The United States Supreme Court's decision in *Commonwealth Coatings Corporation v. Continental Casualty Company,* is the seminal case construing the "evident partiality" of § 10 of the FAA. In *Commonwealth Coatings,* "a subcontractor[ ] ... sued the sureties on the prime contractor's bond to recover money alleged to be due for a painting job." [98] The subcontract for the painting work contained an arbitration clause by which the prime contractor selected one arbitrator, the subcontractor selected a second arbitrator and then the parties' two arbitrators selected a third "supposedly neutral" arbitrator to complete the panel.[99] After the arbitration was completed and the panel entered an award favorable to the prime contractor and its sureties, the subcontractor learned of "close business connections between the third [so-called neutral] arbitrator and the prime contractor." Specifically, the subcontractor learned that the third arbitrator had served as an engineering consultant for the prime contractor "sporadic[ally] in that the arbitrator's services were used only from time to time at irregular inter-

vals, and there had been no dealings between them for about a year immediately preceding the arbitration," but the business dealings, which involved "fees of about $12,000 over a period of four or five years" included "services on the very projects involved in this lawsuit," considered by the Court to be "significant." [100] Justice White and Justice Marshall's concurring opinion noted:

> Of course, an arbitrator's business relationships may be diverse indeed, involving more or less remote commercial connections with great numbers of people. He cannot be expected to provide the parties with his complete and unexpurgated business biography. But it is enough for present purposes to hold, as the Court does, that where the arbitrator has a substantial interest in a firm which has done more than trivial business with a party, that fact must be disclosed. If arbitrators err on the side of disclosure, as they should, it will not be difficult for courts to identify those undisclosed relationships which are too insubstantial to warrant vacating an award.[101]

The United States Court of Appeals for the Fifth Circuit, in *Positive Software Solutions, Inc. v. New Century Mortgage Corporation,* addressed the "evident partiality" standard, stating:

> On its face, "evident partiality" conveys a stern standard. Partiality means

97. Docket no. 5 at 2.

98. 393 U.S. 145, 146, 89 S.Ct. 337, 338, 21 L.Ed.2d 301 (1968).

99. *Id.*

100. *Id.*

101. *Id.* at 151–52, 89 S.Ct. at 340–41. The dissenting opinions of Justices Fortas, Harlan and Stewart noted that the third arbitrator was not asked about his business connections

with either party and was a leading consulting engineer who had performed services for " 'most of the contractors in Puerto Rico.' " Further, the dissent noted it had been "conceded that there was in fact no irregularity, unfairness, bias, or partiality." *Id.* at 152–53, 89 S.Ct. at 341. The Texas Supreme Court applied *Commonwealth Coatings* when interpreting the "evident partiality" standard in the Texas General Arbitration Act, not the FAA, in *TUCO,* 960 S.W.2d at 629.

bias, while "evident" is defined as "clear to the vision or understanding" and is synonymous with manifest, obvious, and apparent. Webster's Ninth New Collegiate Dictionary 430 (1985). The statutory language, with which we always begin, seems to require upholding arbitral awards unless bias was clearly evident in the decisionmakers.[102]

The Court noted the division among the circuits in interpreting the Supreme Court's rather unclear "plurality-plus" opinion in *Commonwealth Coatings*.[103] The Fifth Circuit, ruling *en banc*, stressed that despite differing views on particulars, all circuits agreed that "nondisclosure alone does not require *vacatur* of an arbitral award for evident partiality."[104] The Fifth Circuit held that an arbitrator's nondisclosure of "trivial or insubstantial prior relationships" would be insufficient to justify *vacatur* under the better reading of the *Commonwealth Coatings* standard.[105] Announcing the standard, the Court stated:

> Neither the FAA nor the Supreme Court, nor predominant case law, nor sound policy countenances *vacatur* of FAA arbitral awards for nondisclosure by an arbitrator unless it creates **a concrete, not speculative impression of bias** .... *vacatur* is only warranted

upon nondisclosure that involves a significant compromising relationship.[106]

■ Here, Aero Sky has not identified any non-disclosure by Judge Specia that creates "a concrete, not speculative impression of bias." Nor has Aero Sky demonstrated Judge Specia was "actually biased." [107] MPJ's lawyer represents he practices in Houston and never "met or heard of Judge Specia before this case." [108] MPJ is a foreign corporation with no demonstrated contacts with Judge Specia; MPJ's principal, Mr. Flynn, testifies he never "met or even heard of Judge Specia" before the mediation.[109] Aero Sky has produced no evidence to show these representations are not accurate or relevant. MPJ asked for an award of $775,243.20 in proposed findings and conclusions it submitted to Judge Specia,[110] but was awarded less than half that amount in the amended Award, a determination that supports a conclusion there was an independent, unbiased assessment of the parties' disputes. Judge Specia's findings and conclusions in support of the Award show no bias.

Aero Sky's central arguments to show evident partiality or corruption appear to be Judge Specia's evidentiary determina-

**102.** 476 F.3d 278, 281 (5th Cir.2007).

**103.** *Id.* at 281–82.

**104.** *Id.* at 282–83. Eleven judges joined in the Fifth Circuit's decision, with five dissenting, and one not participating.

**105.** *Id.* at 283.

**106.** *Id.* at 286 (emphasis added). *Positive Software* is further discussed in the Court's September 17, 2008 ruling on plaintiffs' motion for protective order and sanctions. *See* docket no. 33 at 17–19.

**107.** *See Weber v. Merrill Lynch Pierce Fenner & Smith, Inc.,* 455 F.Supp.2d 545, 550 (N.D.Tex.2006) (collecting cases and holding

that evident partiality is not established by alleged "actual bias" in nondisclosure cases unless a reasonable person would conclude that the arbitrator was partial to one side) (citations and quotations omitted); *see also Morelite Constr. Corp. v. New York City Dist. Council Carpenters Benefit Funds,* 748 F.2d 79, 84 (2nd Cir.1984); *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.,* 991 F.2d 141, 146 (4th Cir.1993).

**108.** Docket no. 7 at 6.

**109.** *Id.,* exhibits 1 and 1–A at 2.

**110.** *Id.* at 6.

tions—to consider evidence about parking/storage fees (and resolve the matter, to some degree at least, against Aero Sky) and to consider Mr. Iniekpo's expert opinions. But, Aero Sky has not demonstrated that Judge Specia's evidentiary and other rulings were fundamental errors that deprived it of a fair hearing.[111]

In sum, Aero Sky's disagreements with the manner in which Judge Specia resolved disputes about the parking/storage fees at issue and Mr. Iniekpo's testimony, on this record, are too attenuated to show "evident partiality" or corruption or the deprivation of a fair hearing.

**c. misconduct on the part of the arbitrator in refusing to hear pertinent and material evidence or other misbehavior which prejudiced Aero Sky's rights [§ 10(a)(3)]**

An arbitral award may be vacated if the arbitrator refused to hear pertinent and material evidence or exhibited "other misbehavior by which the rights of any party have been prejudiced."[112] The Fifth Circuit recently explained the § 10(a)(3) standard as follows:

> To constitute misconduct requiring vacation of an award, an error in the arbitrator's determination "must be one that is not simply an error of law, but which so affects the rights of a party that it may be said that he was deprived of a fair hearing." *El Dorado School District No. 15 v. Continental Casualty Co.*,

247 F.3d 843, 848 (8th Cir.2001) (internal quotation marks omitted); *see also Apex Fountain Sales v. Kleinfeld*, 818 F.2d 1089, 1094 (3d Cir.1987) ("Under Federal law, misconduct apart from corruption, fraud, or partiality in the arbitrators justifies reversal only if it so prejudices the rights of a party that it denies the party a fundamentally fair hearing."). We review the district court's application of these principles *de novo. See Prestige Ford v. Ford Dealer Computer Services*, 324 F.3d 391, 394 (5th Cir.2003).[113]

Aero Sky argues that the arbitrator wrongly refused to hear evidence regarding: (1) the fair market value of the maintenance work Aero Sky performed on the aircraft proffered by Mr. Fourrier at the hearing such that MPJ, in Aero Sky's view, "suffered no actual damages from any alleged fraud or breach of contract;"[114] and (2) the FAA's alleged investigation of Mr. Iniekpo.[115] Aero Sky has not met its burden to show any action of the arbitrator amounts to prejudicial "misconduct" within the meaning of § 10(a)(3). In support, Aero Sky submits an affidavit from Mr. Fourrier in which he testifies about his recollection and understanding of the arbitration hearings.

As a threshold matter, Mr. Fourrier's testimony is not a substitute for a written or other official transcript of the arbitration hearings. Neither side secured

---

**111.** *See Forsythe*, 915 F.2d at 1023 (" "The arbitrator is not bound to hear all of the evidence tendered by the parties; however, he must give each of the parties to the dispute an adequate opportunity to present its evidence and arguments." *Hoteles Condado Beach v. Union De Tronquistas Local 901*, 763 F.2d 34, 39 (1st Cir.1985). An evidentiary error "must be one that is not simply an error of law, but which so affects the rights of a party that it may be said that he was deprived of a fair hearing." *Newark Stereotypers' Union No. 18*

*v. Newark Morning Ledger Co.*, 397 F.2d 594, 599 (3d Cir.), *cert. denied*, 393 U.S. 954, 89 S.Ct. 378, 21 L.Ed.2d 365 (1968).").

**112.** 9 U.S.C. § 10(a)(3).

**113.** *Laws v. Morgan Stanley Dean Witter*, 452 F.3d 398, 399 (5th Cir.2006).

**114.** Docket no. 5, exhibit B at 2.

**115.** *Id.* at 3.

or presented to this Court a transcript of any of the arbitration hearings. To be clear, this Court cannot evaluate the exact determination made by Judge Specia, in its context, because Aero Sky, which bears the burden in this Court, did not secure a transcript. As made clear by the United States Supreme Court and the Fifth Circuit, a party challenging an arbitral award has the burden to establish one of the statutory grounds in the " 'extraordinarily narrow' " scope of federal court review [116] and does not obtain a new hearing on the factual merits of matters addressed in the arbitration by offering *new* testimony.

■ As explained by the Fifth Circuit, arbitration hearings are expected to be efficient:

> As a speedy and informal alternative to litigation, arbitration resolves disputes without confinement to many of the procedural and evidentiary strictures that protect the integrity of formal trials.... Parties to voluntary arbitration may not superimpose rigorous procedural limitations on the very process designed to avoid such limitations. *Commercial Solvents Corp. v. Louisiana Liquid Fertilizer Co.,* 20 F.R.D. 359, 362 (S.D.N.Y.1957). The informal nature of arbitration proceedings effectuates the national policy favoring arbitration, and such proceedings require

"expeditious and summary hearing, with only restricted inquiry into factual issues." *Legion Insurance Co. v. Insurance General Agency, Inc.,* 822 F.2d 541, 543 (5th Cir.1987), quoting *Moses H. Cone Memorial Hosp.,* 460 U.S. 1 [at] 22, 103 S.Ct. 927 [at] 940, 74 L.Ed.2d 765 (1983).

Submission of disputes to arbitration always risks an accumulation of procedural and evidentiary shortcuts that would properly frustrate counsel in a formal trial. But because "the advantages of arbitration are speed and informality, an arbitrator should be expected to act affirmatively to simplify and expedite the proceedings before him." *Fairchild & Co., Inc. v. Richmond, F. & P. Railroad,* 516 F.Supp. 1305, 1313 (D.D.C.1981).[117]

Thus, Aero Sky must show not merely that the proffered testimony of Mr. Fourrier on fair market value and the alleged FAA investigation of Mr. Iniekpo may have been relevant, but that it was "pertinent *and material* to the controversy" and/or that Aero Sky's rights were prejudiced.

■ Even if Mr. Fourrier's affidavit is sufficient to colorably raise the issue of improper refusal to consider evidence of the "fair market value" of the work it performed,[118] Aero Sky has not demon-

---

**116.** *Prescott,* 369 F.3d at 494.

**117.** *Forsythe,* 915 F.2d at 1022.

**118.** Mr. Fourrier entire testimony on this point is as follows:

> I attended all sessions of the arbitration held by John J. Specia. At that proceeding, the arbitrator refused to hear evidence of the fair market value of the maintenance performed by Aero Sky on MPJ's aircraft. While Aero Sky specifically denies it agreed to arbitrate fraud claims or that any fraud was committed, such evidence would have proven that the flat fee contract agreed to by MPJ was at least $500,000 to $1,000,000

lower than the fair market value of such maintenance at any other repair station in the United States. Furthermore, if MPJ had wanted to take the aircraft to another repair station to have the necessary maintenance performed, it would have cost upwards of $250,000 just to get the Aircraft into a condition that it could be flown safely to another location. Accordingly, MPJ suffered no actual damages from *any alleged fraud.*

Docket no. 5, exhibit B at 5–6, ¶ 13 (emphasis added).

Mr. Fourrier's affidavit does not address the proposed witness to sponsor the noted testi-

strated that the "fair market value" of services rendered is "pertinent and material." The parties' General Terms Agreement, in sum, called for a price cap, with a specific price/refund formula, for specified work to be performed on the aircraft. The purported fair market value of the work presumably would have been a matter both sides considered *before* entering into the General Terms Agreement. But, Aero Sky has offered no authority to show that once the parties entered into the Agreement, the terms of their contract do not control the price to be paid for specified work or that contractual provisions can be set aside in favor of later-offered evidence on the fair market value of the work performed. Thus, Aero Sky has not shown the proffered testimony is "pertinent and material" or that Aero Sky's rights were

prejudiced as a matter of law by the failure to consider it.[119]

With respect to Judge Specia's refusal to re-open the evidence to hear evidence of alleged misconduct of Mr. Iniekpo then being investigated by the FAA, Aero Sky's motion to re-open, MPJ's response, and Judge Specia's decision not to re-open the evidence are included as exhibits to MPJ's motion to confirm.[120] Judge Specia ruled that, in sum and in part, the hearing should not be re-opened because Mr. Fourrier's testimony about an on-going FAA investigation had not resulted in any findings (let alone of misconduct), would be hearsay, any evidence about records should have been presented at the hearing, and re-opening evidence would impermissibly delay the final award (in violation of Rule R–36 of the Commercial Arbitration

mony at the arbitration hearing (if other than himself) or the basis for concluding the fair market value of the work was higher than the contract amount. Nor does Mr. Fourrier provide facts to show that the aircraft would have had to have been flown to a location other than the San Antonio International Airport for the work to have been performed by another vendor. More significantly, Aero Sky provides no case authority to show that—even if colored as relevant to "fraud claims"—a party to a contract may impeach the contract terms for work and payment by proposed evidence of fair market value. Although the arbitrator determined that MPJ's contention it should not be required to pay Aero Sky certain pre-Agreement parking/storage fees as a matter relating to the issues arbitrated and a potential off-set to any amounts MPJ may owe for work performed under the Agreement, Aero Sky must provide case authority to show contract terms can be impeached by proffered evidence of fair market value to show any of their rights were prejudiced. This it has not done.

119. Aero Sky "make[s] it clear that it is not using the term 'manifest disregard of the law' as a term of legal art, citing that it "is aware of the United States Supreme Court's decision in … *Mattel* …." Docket no. 11 at 4. "Manifest disregard of law" is no longer via-

ble under recent Supreme Court and Fifth Circuit holdings which limit the grounds for challenging an arbitration award under the FAA to those stated in 9 U.S.C. §§ 10 and 11. *See Mattel,* 552 U.S. at 588–90, 128 S.Ct. at 1406 and *Rogers v. KBR Technical Services Inc.,* —— Fed.Appx. ——, ——, 2008 WL 2337184 at *2 (5th Cir. June 9, 2008) (unpublished) ("This Circuit has previously held that an arbitration award may be vacated on non-statutory grounds when an arbitrator manifestly disregards the law, which "is an extremely narrow, judicially-created rule with limited applicability," or if it is "contrary to public policy." * * * The Supreme Court has recently held that the provisions of the FAA are the exclusive grounds for expedited *vacatur* and modification of an arbitration award, which calls into doubt the non-statutory grounds which have been recognized by this Circuit …. because we affirm the district court and hold that the arbitration award is confirmed, there is no need in the instant case to determine whether those non-statutory grounds for *vacatur* of an arbitration award remain good law after *Mattel*.") (citations omitted).

120. Docket no. 1, exhibits 11–13.

Rules).[121] Aero Sky has not demonstrated that the proffered hearsay evidence was "pertinent and material" or that Judge Specia's decision not to re-open the hearings to consider it prejudiced Aero Sky's rights.

In sum, Aero Sky has not demonstrated that the arbitrator's refusal to hear the noted evidence amounted to "misconduct" or "misbehavior." Aero Sky has not shown the evidence at issue was "pertinent and material" such that a refusal to consider it was "misconduct" or that its rights were prejudiced by Judge Specia's evidentiary rulings such that they constitute "misbehavior." Aero Sky has provided no argument or authority to show that Judge Specia's rulings were erroneous or affected the fundamental fairness of the arbitration. Absent this case authority and argument, Aero Sky's argument is nothing more than an expression of disagreement with evidentiary rulings which does not support *vacatur*.

**d. arbitrator exceeded his powers by so imperfectly executing authority that a mutual, final and definite award was not made [§ 10(a)(4) ]**

 An arbitral award may be vacated when the arbitrator "exceeded" his power or "so imperfectly executed" his power that "a mutual, final, and definite award upon the subject matter submitted was not made."[122] Relevant to this ground, Aero Sky argues the arbitrator: (1) wrongly admitted and considered the testimony of Mr. Iniekpo; (2) disregarded certain evidence regarding parking/storage fees; and (3) considered certain evidence regarding parking/storage fees which Aero Sky did not agree to arbitrate.[123]

With respect to Mr. Iniekpo's expert testimony, the AAA's Commercial Rules of Arbitration do not require a party sponsoring an expert witness necessarily to satisfy *Daubert*, as conformity to the rules of evidence is not always necessary.[124] Nevertheless, MPJ argues, and Aero Sky does not rebut, Judge Specia permitted Aero Sky's attorney to conduct "an extensive *voir dire* for *Daubert* purposes before finding Iniekpo qualified to state his opinions."[125] Further, according to Judge Specia's ruling denying Aero Sky's request to re-open the evidence, Judge Specia "reset the continuation of the hearing to allow Mr. Sprague [Aero Sky's counsel] to fully cross examine him during the arbitration" and "[h]is cross was thorough and comprehensive."[126] Other than submitting the unsigned draft report of Mr. Iniekpo[127] in support of its contention Judge Specia did not provide "fair hearing to all parties"[128] and suggesting, without support, the $10,000 expert witness fee awarded to MPJ was not proper or implying it was not a payment for services as an expert witness, Aero Sky has not supported its claim Judge Specia "exceeded his powers by so imperfectly executing authority that a mutual, final and definite award was not made." Aero Sky has not claimed it could not and did not cross-examine Mr. Iniekpo on any of matters it disputes regarding his

**121.** *Id.*, exhibit 13.

**122.** 9 U.S.C. § 10(a)(4).

**123.** Docket no. 5 at 2, 3–5

**124.** *Forsythe*, 915 F.2d at 1022; docket no. 7, exhibit 5 (Rule R–31, Commercial Rules of Arbitration).

**125.** Docket no. 5 at 9.

**126.** Docket no. 1, exhibit 13.

**127.** Aero Sky did not respond to MPJ's challenge to Mr. Iniekpo's unsigned draft report (docket no. 12) submitted with Aero Sky's reply (docket no. 11).

**128.** Docket no. 11 at 1.

testimony, role in the case, final report or draft report.[129] That Judge Specia disagreed with Aero Sky's position, admitted and considered Mr. Iniekpo's testimony is not, without more, a basis to vacate. The focus of this Court is on the narrow grounds identified in § 10, not a complete review of the merits of the arbitrator's decision.[130]

Similarly, Aero Sky's disagreement with the arbitrator's consideration of whether MPJ was entitled to an award of money relating to pre-Agreement parking/storage fees does not demonstrate a ground to vacate. As discussed, Aero Sky has not shown the facts relating to the so-called "fraud" regarding parking/storage fees arise from the same facts as the contract claim.[131] As such, the arbitration properly considered the payments as moneys which MPJ was entitled to off-set or being repaid.

In sum, Aero Sky has not demonstrated that the arbitrator "exceeded his powers by so imperfectly executing authority that a mutual, final and definite award was not made" or that a fair hearing was not achieved.

### 3. Grounds to modify

▮ Aero Sky also advances one ground to modify the Award: the arbitrator wrongly "awarded on matters not submitted to him, … specifically fraud and the parking fee agreement."[132] Aero Sky has not submitted a proposed order in support of its counter-motion to modify or vacate or otherwise included a specific directive in a "wherefore" clause regarding the area for modification (only that the amended Award in its entirety should be vacated). But, it appears Aero Sky seeks a Court order "backing out" or deducting from the amounts awarded any recovery for parking/storage fees for the aircraft and recalculation of prejudgment interest if and as it may depend on that amount.

Pursuant to § 11 of the FAA, a court may modify an award based on "an evident miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award;" or the arbitrator "awarded upon a matter not submitted" (unless it is irrelevant to the matter submitted); or the "award is imperfect in a matter of form not affecting the merits."[133] Aero Sky does not argue there is miscalculation or mistake or a mistake as to form, but that the matter regarding parking/storage costs incurred for the aircraft was "not submitted." But, as discussed above, this Court cannot conclude Judge Specia erroneously determined parking/storage fees—either those addressed in Annex C to the Agreement or those charged for parking/storing the aircraft before the Agreement was signed—were outside the scope of the arbitration clause in the Agreement or the parties' Stipulation to arbitrate. Thus, for those same reasons, the Court cannot conclude Aero Sky has demonstrated a ground to modify the Award on this basis.

### C. Conclusion

Consequently, for all the foregoing reasons, Aero Sky has not demonstrated that either the FAA nor common law requires *vacatur* or modification of the Award.

---

**129.** *See id.* at 2.

**130.** *See Brown v. Witco Corp.,* 340 F.3d 209, 216 (5th Cir.2003).

**131.** *See Smith/Enron Cogeneration Ltd. Partnership,* 198 F.3d at 99.

**132.** Docket no. 5 at 1–2, 5.

**133.** 9 U.S.C. § 11.

Similarly, MPJ has demonstrated the Award should be confirmed.

## VI. RECOMMENDATIONS

Based on the foregoing discussion, it is recommended that:

· MPJ, My Personal Jet, A.V.V.'s motion for order confirming arbitration award [134] should be **GRANTED;**

· Aero Sky, L.L.C.'s counter motion to modify or vacate the arbitration award [135] should be **DENIED;**

· MPJ's objection to Aero Sky's reply [136] be **SUSTAINED** and motion to strike exhibit A attached to Aero Sky's reply [137] be **GRANTED** such that Mr. Iniekpo's unsigned expert report, submitted without a signature from Mr. Iniekpo, the exhibits included with Mr. Iniekpo's final report, or a covering explanatory affidavit are not considered by the Court in this proceeding;

· MPJ's request for oral argument "[i]f it will in any manner assist the Court in expediting the confirmation of the award and entry of judgment," [138] is **DENIED.** After MPJ filed its motion to confirm, including the offer of oral argument, MPJ's motion and Aero Sky's cross-motion were referred to the undersigned. A hearing before the undersigned likely would require the preparation of the transcript of that hearing for review by the District Judge along with any objections to the report. As no party has indicated the written record is not complete, the undersigned cannot conclude the additional attorneys' fees, expenses and costs associated with such a hearing would be appropriate at this time; and

· Aero Sky's request for "a hearing on confirmation be held," at which the court would "receive evidence" prior to vacating the arbitrator's award, dismissing this case with prejudice,[139] is **DENIED.**

## VII. INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO OBJECT/APPEAL

The United States District Clerk shall serve a copy of this Report and Recommendation on all parties by either: (1) electronic transmittal to all parties represented by an attorney registered as a Filing User with the Clerk of Court pursuant to the Court's Procedural Rules for Electronic Filing in Civil and Criminal Cases; or (2) by certified mail, return receipt requested, to any party not represented by an attorney registered as a Filing User.

As provided in 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(b), any party who desires to object to this Report must **file** with the District Clerk and **serve** on all parties and the Magistrate Judge written Objections to the Report and Recommendation within 10 days after being served with a copy, unless this time period is modified by the District Court. A party filing Objections must specifically identify those findings, conclusions or recommendations to which objections are being made

---

**134.** Docket no. 1. The undersigned has noted that MPJ requested an award of "all costs . . . [and] . . . attorney's fees" in its motion to confirm. *Id.* at 8. The appropriateness of an award of costs and fees will not be addressed until after the District Judge enters an Order on the recommendations in this report and may be addressed by the District Judge in connection with the entry of any judgment in this case.

**135.** Docket no. 5.

**136.** Docket no. 12.

**137.** *Id.*

**138.** Docket no. 1 at 7.

**139.** Docket no. 5 at 5.

and the basis for such objections; the District Court need not consider frivolous, conclusive or general objections.

A party's failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this Report will bar the party from receiving a *de novo* determination by the District Court.[140] Additionally, a party's failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this Report will bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.[141]

**SIGNED** and **ENTERED** this 10th day of November, 2009.

**140.** *See Thomas v. Arn,* 474 U.S. 140, 150, 106 S.Ct. 466, 472, 88 L.Ed.2d 435 (1985).

**141.** *Acuna v. Brown & Root Inc.,* 200 F.3d 335, 340 (5th Cir.2000); *Douglass v. United Serv. Auto. Ass'n.,* 79 F.3d 1415, 1428 (5th Cir.1996).